**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ATTACK THE SOUND LLC, an Illinois limited liability company, DAVID WOULARD, STAN BURJEK, JAMES BURJEK, BERK ERGOZ, HAMZA JILANI, MAATKARA WILSON, ARJUN SINGH, MAGNUS FIENNES, and MICHAEL MELL, each individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) | Case No. 25-cv-15354 |
| Plaintiffs, | ) ) ) | District Judge Joan B. Gottschall<br><br>Magistrate Judge Keri L. Holleb Hotaling |
| v. | ) ) | |
| KUNLUN TECH CO., LTD, SKYWORK AI PTE. LTD, and UNKNOWN DEFENDANTS, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFFS' OPPOSITION TO KUNLUN TECH'S AND SKYWORK AI's
MOTIONS TO DISMISS THE COMPLAINT OR,
<u>IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

I.      The Court Has Personal Jurisdiction Over Both Defendants........................................ 2

     A.      Legal Standards Governing Specific Jurisdiction.................................................. 2

     B.      Skywork Sells and Operates Mureka in Illinois. .................................................. 3

     C.      Kunlun's Own Conduct Supports Jurisdiction ...................................................... 5

     D.      Neither Defendant Names Another Forum, So National Contacts Control........... 7

     E.      At Minimum, Narrow Jurisdictional Discovery Should Precede Dismissal.......... 8

II.     The Complaint Gives Each Defendant Fair Notice ........................................................ 8

III.    Section 411(A) Requires Work-Specific Narrowing,
    Not Count-Wide Dismissal. ........................................................................................ 10

     A.      The Registered and Non-U.S. Works Defeat Count-Wide Dismissal. ................ 11

     B.      The Certificates' Fields Preserve Counts IV and V............................................ 12

IV.     The Complaint Expressly Pleads Domestic Conduct. .................................................. 13

V.      The Complaint States Each DMCA Claim. ................................................................. 15

     A.      Count VI Identifies the CMI, the Copies, the Removal, and the Scienter........... 15

     B.      Count VII Pleads Direct Circumvention and Needs No Trafficking Element..... 17

     C.      Count VIII Identifies Deliberate False CMI Practices and Observed Outputs.... 18

VI.     The Complaint Pleads Both Secondary Liability Claims .............................................. 20

     A.      Mureka's Sound-Alike Marketing Pleads Inducement, and Its Bespoke Fine-
        Tuning Offering Supports the Alternative Tailoring Theory. (Count IX)........... 20

     B.      Defendants Control the Engine, and the Advertised Capability
        Is the Draw. (Count X).................................................................................... 22

VII. The Illinois Statutory Claims Are Well Pleaded............................................................... 23

    A. Count XI Pleads Each BIPA Subsection It Invokes. ........................................... 23

    B. Count XII Pleads a Digital Replica (§ 30(b)) and Commercial Identity Use (§ 30(a)). ........................................................................................................ 26

    C. Count XIII Targets Ongoing Deception in Plaintiffs' Market............................ 27

    D. Count XIV Preserves Restitution Tethered to Surviving Wrongs. ...................... 28

VIII. The Copyright Act Does Not Preempt The State-Law Theories Plaintiffs Press. ........... 28

CONCLUSION..................................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*,
    751 F.3d 796 (7th Cir. 2014) ........................................................................................ 3

*Agfa Monotype Corp. v. Adobe Systems, Inc.*,
    404 F. Supp. 2d 1030 (N.D. Ill. 2005) ..................................................................... 17-18

*Andersen v. Stability AI Ltd.*,
    700 F. Supp. 3d 853 (N.D. Cal. 2023) ....................................................................... 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................. 10

*ATC Healthcare Services, Inc. v. RCM Technologies, Inc.*,
    192 F. Supp. 3d 943 (N.D. Ill. 2016) ....................................................................... 27-28

*Avery v. State Farm Mutual Automobile Insurance Co.*,
    835 N.E.2d 801 (Ill. 2005) ........................................................................................ 26

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*,
    805 F.2d 663 (7th Cir. 1986) .................................................................................... 29

*Bank of America, N.A. v. Knight*,
    725 F.3d 815 (7th Cir. 2013) .................................................................................... 8–9

*Bank of Montreal v. SK Foods, LLC*,
    No. 09 C 3479, 2011 WL 4578357 (N.D. Ill. Sept. 30, 2011)...................................... 5

*be2 LLC v. Ivanov*,
    642 F.3d 555 (7th Cir. 2011) .................................................................................... 3

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................. 10

*Brown v. Budz*,
    398 F.3d 904 (7th Cir. 2005) .................................................................................... 14

*Bryant v. Compass Group USA, Inc.*,
  958 F.3d 617 (7th Cir. 2020) ........................................................................ 24

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ...................................................................................... 3

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
  761 F.3d 732 (7th Cir. 2014) ........................................................................ 27

*Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*,
  230 F.3d 934 (7th Cir. 2000) ........................................................................ 8

*Chapman v. Yellow Cab Cooperative*,
  875 F.3d 846 (7th Cir. 2017) ........................................................................ 10

*CouponCabin LLC v. Savings.com, Inc.*,
  2016 WL 3181826 (N.D. Ind. June 8, 2016) ................................................ 17

*Cox Communications, Inc. v. Sony Music Entertainment*,
  607 U.S. 583 (2026) ................................................................................ 20–22

*Crowley v. Jones*,
  608 F. Supp. 3d 78 (S.D.N.Y. 2022) ....................................................... 16, 19

*Curry v. Revolution Laboratories, LLC*,
  949 F.3d 385 (7th Cir. 2020) ................................................................. 2–3, 7

*D'Ambrosio v. Meta Platforms, Inc.*,
  176 F.4th 928, 934-36 (7th Cir. 2026) .......................................................... 27

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003) ........................................................................................ 28

*Davis v. e.l.f. Cosmetics, Inc.*,
  No. 22 C 5069, 2024 WL 2722663 (N.D. Ill. May 28, 2024) ....................... 25

*Design Basics, LLC v. WK Olson Architects, Inc.*,
  No. 17 C 7432, 2019 WL 527535 (N.D. Ill. Feb. 11, 2019) ..................... 16, 19

*Doe 1 v. GitHub, Inc.*,
  2024 WL 235217, at *8–9 (N.D. Cal. Jan. 22, 2024) .................................... 16

*Doe v. Cotterman*,
   2018 WL 1235014 (N.D. Ill. Mar. 9, 2018)..............................................................................4

*Dynamic Fluid Control (PTY) Ltd. v. International Valve Manufacturing, LLC*,
   790 F. Supp. 2d 732 (N.D. Ill. 2011) ....................................................................................28

*Flava Works, Inc. v. Gunter*,
   689 F.3d 754 (7th Cir. 2012) ................................................................................................21

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
   592 U.S. 351 (2021)..........................................................................................................3–5, 8

*Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*,
   586 U.S. 296 (2019)...............................................................................................................10

*Fox v. Dakkota Integrated Systems, LLC*,
   980 F.3d 1146 (7th Cir. 2020) ..............................................................................................24

*Green v. U.S. Department of Justice*,
   111 F.4th 81 (D.C. Cir. 2024)...............................................................................................18

*Gruca v. Alpha Therapeutic Corp.*,
   19 F. Supp. 2d 862 (N.D. Ill. 1998) ........................................................................................6

*Heard v. Becton, Dickinson & Co. (Heard I)*,
   440 F. Supp. 3d 960 (N.D. Ill. 2020) ...............................................................................24–26

*Heard v. Becton, Dickinson & Co (Heard II)*,
   524 F. Supp. 3d 831 (N.D. Ill. 2021) ....................................................................................24

*Howell v. Bumble, Inc.*,
   No. 21 C 6898, 2023 WL 6126492 (N.D. Ill. Sept. 19, 2023)..................................................6

*Huon v. Denton*,
   841 F.3d 733 (7th Cir. 2016) .....................................................................................9-10, 18, 24

*IDS Life Insurance Co. v. SunAmerica Life Insurance Co.*,
   136 F.3d 537 (7th Cir. 1998) ...................................................................................................6

*Illinois v. Hemi Group LLC*,
   622 F.3d 754 (7th Cir. 2010) ...................................................................................................4

*In re Clearview AI, Inc., Consumer Privacy Litigation*,
    585 F. Supp. 3d 1111 (N.D. Ill. 2022) ................................................................. 26

*ISI International, Inc. v. Borden Ladner Gervais LLP*,
    256 F.3d 548 (7th Cir. 2001) ...........................................................................7-8

*Johnson v. City of Shelby*,
    574 U.S. 10 (2014) ............................................................................................. 27

*Jordan v. City of Chicago*,
    No. 20 C 4012, 2021 WL 1962385 (N.D. Ill. May 17, 2021) ............................. 10

*Kahn v. Walmart Inc.*,
    107 F.4th 585 (7th Cir. 2024) ............................................................................ 27

*Laws v. Sony Music Entertainment, Inc.*,
    448 F.3d 1134 (9th Cir. 2006) ........................................................................... 29

*Mango v. BuzzFeed, Inc.*,
    970 F.3d 167 (2d Cir. 2020) .............................................................................. 17

*Matlin v. Spin Master Corp.*,
    921 F.3d 701 (7th Cir. 2019) ............................................................................... 5

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ...................................................................................... 20–21

*Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*,
    623 F.3d 440 (7th Cir. 2010) ............................................................................4-5

*Monroy v. Shutterfly, Inc.*,
    No. 16 C 10984, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) .......................... 26

*Motorola Solutions, Inc. v. Hytera Communications Corp. Ltd.*,
    108 F.4th 458 (7th Cir. 2024) ............................................................................ 14

*Mussat v. IQVIA, Inc.*,
    953 F.3d 441 (7th Cir. 2020) ............................................................................... 3

*NBA Properties, Inc. v. HANWJH*,
    46 F.4th 614 (7th Cir. 2022) ...........................................................................3–4

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) ........................................................................ 23

*Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.*,
    975 F. Supp. 2d 920 (N.D. Ill. 2013) ........................................................... 16

*Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*,
    338 F.3d 773 (7th Cir. 2003) .......................................................................... 2

*Reed Elsevier, Inc. v. Muchnick*,
    559 U.S. 154 (2010) ...................................................................................... 10

*Richardson v. Kharbouch*,
    156 F.4th 849 (7th Cir. 2025) ................................................................. 12, 29

*Rodriguez v. ByteDance, Inc.*,
    No. 23 CV 4953, 2025 WL 672951 (N.D. Ill. Mar. 3, 2025) .................. 23, 25–26

*Rosenbach v. Six Flags Entertainment Corp.*,
    2019 IL 123186 .............................................................................................. 25

*Rundquist v. Vapiano SE*,
    798 F. Supp. 2d 102 (D.D.C. 2011) .............................................................. 15

*Seng-Tiong Ho v. Taflove*,
    648 F.3d 489 (7th Cir. 2011) ........................................................................ 28

*Subafilms, Ltd. v. MGM-Pathe Communications Co.*,
    24 F.3d 1088 (9th Cir. 1994) ..................................................................... 14-15

*Sun v. Xie*,
    2025 WL 2467497 (N.D. Ill. Aug. 27, 2025) ............................................... 17

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) .......................................................................... 2

*Thornley v. Clearview AI, Inc.*,
    984 F.3d 1241 (7th Cir. 2021) ...................................................................... 25

*Toney v. L'Oreal USA, Inc.*,
    406 F.3d 905 (7th Cir. 2005) .................................................................... 28–29

*UMG Recordings, Inc. v. Kurbanov*,
2021 WL 6492907 (E.D. Va. Dec. 16, 2021), report and recommendation adopted,
2022 WL 20417526 (E.D. Va. Feb. 10, 2022) ........................................................................... 18

*VHT, Inc. v. Zillow Group, Inc.*,
918 F.3d 723 (9th Cir. 2019) ..................................................................................................... 22

*Walden v. Fiore*,
571 U.S. 277 (2014) ..................................................................................................................... 3

*Zellmer v. Meta Platforms, Inc.*,
104 F.4th 1117 (9th Cir. 2024) .................................................................................................. 24

## STATUTES AND REGULATIONS

17 U.S.C. § 101 ............................................................................................................................... 12

17 U.S.C. § 106 ........................................................................................................................... 28–30

17 U.S.C. § 114(b) ........................................................................................................................... 29

17 U.S.C. § 1201 ............................................................................................................................. 17

17 U.S.C. § 1202 .......................................................................................................... 16, 18, 28, 30

17 U.S.C. § 301 ............................................................................................................................... 28

17 U.S.C. § 411(a) ...................................................................................................................... 10–12

17 U.S.C. § 412 ............................................................................................................................... 11

37 C.F.R. § 202.3(b)(1)(iv)(A)-(C) ................................................................................................. 13

735 ILCS 5/2-209(c) ......................................................................................................................... 2

740 ILCS 14/15(a)–(d) ................................................................................................................ 24–26

765 ILCS 1075/30(a) ................................................................................................................... 26-27

765 ILCS 1075/30(b) .............................................................................................................. 26-27, 29

815 ILCS 510/2(a)(2)–(3) .................................................................................................. 27

## RULES

Fed. R. Civ. P. 4(k)(1)(A) ................................................................................................... 2

Fed. R. Civ. P. 4(k)(2) .............................................................................................. 2, 4, 7–8

Fed. R. Civ. P. 8 ........................................................................................... 9–10, 14, 18, 27

Fed. R. Civ. P. 9(b) ......................................................................................................27-28

Fed. R. Civ. P. 12(b)(1) ..................................................................................................... 10

Fed. R. Civ. P. 12(b)(2) ................................................................................................... 2, 5

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 1, 5, 10, 13

Fed. R. Civ. P. 12(e) ..................................................................................................... 10, 30

Fed. R. Civ. P. 23 ........................................................................................................... 3, 11

Fed. R. Civ. P. 30(b)(6) ....................................................................................................... 8

## OTHER AUTHORITIES

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices
    §§ 504, 803.8(A) (3d ed. 2021) ..................................................................................... 13

**INTRODUCTION**

Kunlun Tech, a publicly traded conglomerate with a market capitalization over $7 billion, and its subsidiary Skywork AI built Mureka, a commercial artificial intelligence music generator, from other people's recordings. (Compl. ¶ 1.) Kunlun's researchers disclosed a pipeline the Complaint ties to Mureka: 10 million DISCO-10M songs and 200,000 "confidential in-house" tracks, with vocals separated and lyrics transcribed. The Complaint alleges additional acquisition through stream-ripping and third-party suppliers, without licenses. (*Id.* ¶¶ 43, 89–94, 169.) Defendants sell the result into Illinois and nationwide as a substitute for the licensed music from which Plaintiffs, working musicians, earn their living, promising users they can "say goodbye to copyright headaches." (*Id.* ¶¶ 46(b), 64–66, 86.)

Both motions rest on the same premise: no American court may call Defendants to account for that conduct. Both seek threshold dismissal by narrowing the pleading. Skywork reduces the alleged domestic "copying, processing, and delivery" to "user-initiated service traffic," while Liu addresses training-side acts but not the Bay Area engineering, the "local servers in the United States," the Illinois billing, or the output-side processing and delivery the Complaint pleads. (Compl. ¶¶ 46(b), (n), (o), (s), 70; Skywork Mem. ("SM") at 10, 26; Liu Decl. ¶¶ 4–9.) Kunlun asserts "only one Kunlun-specific contact," although its employees authored the MusiCoT methodology and Kunlun publicly claims development, promotion, ownership, control, and operation of Mureka. (Compl. ¶¶ 41, 53–58, 89–92; Kunlun Mem. ("KM") at 1.) Kunlun also identifies no state where suit could proceed. (KM at 7.)

Rule 12 permits neither form of narrowing. Uncontroverted jurisdictional allegations stand, and the declarations are not merits evidence. On Defendants' theory, a business may copy American music at industrial scale, engineer and host its product on American infrastructure, and

1

take American subscription revenue, yet remain beyond the reach of every American court. That is not the law, and it is not this record. Plaintiffs concede only the limited registration and remedial issues identified below.[1] The rest of the motions should be denied, and if any jurisdictional fact remains genuinely open, the answer is the targeted discovery described in Part I.E, not dismissal.

## I.     The Court Has Personal Jurisdiction Over Both Defendants.

Because the Court is deciding the Rule 12(b)(2) motions on the papers, Plaintiffs need only make a prima facie showing of jurisdiction. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). The Court accepts uncontroverted jurisdictional allegations, considers the parties' supporting materials, and resolves factual disputes in the record in Plaintiffs' favor. *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392–93 (7th Cir. 2020); *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782–83 (7th Cir. 2003). Plaintiffs invoke specific jurisdiction and, for the federal claims, Rule 4(k)(2). (Compl. ¶¶ 46-48.)

### A.     Legal Standards Governing Specific Jurisdiction

For Illinois-specific jurisdiction, Rule 4(k)(1)(A) incorporates Illinois's jurisdictional limits, and Illinois's long-arm statute extends to the full reach of federal due process. Fed. R. Civ. P. 4(k)(1)(A); 735 ILCS 5/2-209(c); *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).

Specific jurisdiction requires defendant-created, suit-related contacts: the defendant must

---

[1] Plaintiffs do not oppose dismissal without prejudice of copyright claims resting on United States works that remained unregistered when this action was filed. Registrations have since issued, others remain pending, and Plaintiffs will seek leave to replead the affected works in one amendment after the Copyright Office acts. *Infra* Part III.A. This concession reaches no registered work, no non-U.S. work, and no DMCA or state-law claim. Plaintiffs likewise do not oppose dismissal without prejudice of the lyric and composition claims that presently rest solely on SR 845-765 or SRu 1-313-672, which register sound recordings only; Counts IV and V otherwise proceed on the mixed-rights registrations. *Infra* Part III.B. Unjust enrichment is not pressed as a freestanding count; restitution tied to the surviving predicates is preserved. *Infra* Part VII.D.

2

purposefully direct conduct at or avail itself of the forum, the claims must "arise out of or relate to" those contacts, and jurisdiction must be reasonable. *Walden v. Fiore*, 571 U.S. 277, 283–90 (2014); *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 358, 362–65 (2021). A plaintiff's forum presence or injury alone is insufficient, *Walden*, 571 U.S. at 289–90, but "relate to" does not require strict causation, *Ford*, 592 U.S. at 362–65. In internet cases, accessibility alone does not suffice; the defendant must deliberately exploit the forum through suit-related conduct. *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801–03 (7th Cir. 2014); *be2 LLC v. Ivanov*, 642 F.3d 555, 558–59 (7th Cir. 2011). Once minimum contacts are shown, Defendants must make a "compelling case" that jurisdiction is unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985).

In this Rule 23 action, only the named Plaintiffs must establish personal jurisdiction; absent class members need not. *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020).

### B. Skywork Sells and Operates Mureka in Illinois.

Skywork is Mureka's contracting entity and U.S. app-store publisher. The Complaint alleges recurring U.S.-dollar subscriptions and continuing Illinois contracts, with billing and location data sufficient to identify Illinois subscribers. (Compl. ¶¶ 42, 46(b), (n), 57.) It also pleads a Bay Area Mureka engineering operation, "local servers in the United States," and a U.S. endpoint carrying prompts, uploads, and downloads. (Id. ¶¶ 46(o), (x), 70.) Those are defendant-created commercial and operational contacts, not mere website accessibility.

*Curry v. Revolution Labs., LLC* and *NBA Properties, Inc. v. HANWJH* foreclose Skywork's "ordinary platform availability" characterization. An online seller purposefully avails itself of Illinois when it structures its business to transact with Illinois residents and knowingly does so; it need not tailor advertisements to Illinois by name. *Curry*, 949 F.3d at 398–400; *NBA*

3

*Props.*, 46 F.4th 614, 623–25 (7th Cir. 2022); *see also Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 757–60 (7th Cir. 2010). The Complaint alleges repeated Illinois subscriptions and continuing service, not merely an accessible site. Skywork's insistence that it did not "target[] Illinois as Illinois" (SM at 26) applies a requirement the Seventh Circuit has rejected.

The Illinois Plaintiffs' federal and state claims relate to those contacts. The same U.S.-facing Mureka infrastructure that serves Illinois subscribers ingests, copies, processes, and commercially exploits Plaintiffs' works, voiceprints, and vocal identities, including works created, recorded, or exploited in Illinois, and delivers competing outputs into Illinois in response to Illinois-originating inputs. (Compl. ¶¶ 18, 24, 28, 46(s)–(t), 47.) The BIPA capture and injury occurred "primarily and substantially in Illinois," and the Illinois publicity and deception injuries arose through the same service. (*Id.* ¶¶ 49, 288, 307, 312.)[2] *Ford* rejects Skywork's causation-only theory: "arise out of or relate to" does not require proof that a particular Illinois subscription caused a particular training copy. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362–65 (2021). Liu's inability to identify a named-Plaintiff purchase does not negate the pleaded Illinois transactions and in-state statutory injuries. Any federal claim whose Illinois nexus Skywork disputes has the independent Rule 4(k)(2) basis discussed in Part I.D.

Skywork's jurisdiction section treats "Compl. ¶¶ 46(a)–(q), 47" as the universe of contacts and labels them "ordinary platform availability and user activity." (SM at 26.) That range excludes paragraphs 46(r)–(y), including the alleged U.S. copying, processing, delivery, shared pipelines, and Virginia endpoint. Paragraph 46(o), which is inside Skywork's range, alleges a Bay Area Mureka engineering operation that the motion never addresses. *Mobile*

---

[2] Skywork's fallback footnote, that pendent personal jurisdiction would not reach the state-law claims (SM at 28 n.2), fails on the complaint's face: the state claims arise from the same corpus, platform, works, and voices as the federal claims (Compl. ¶¶ 45, 49), the "common nucleus of facts" required by Skywork's cited authority. *See Doe v. Cotterman*, 2018 WL 1235014, at *5 (N.D. Ill. Mar. 9, 2018) (cited at SM at 28 n.2).

4

*Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.* involved no forum sales; this Complaint alleges Illinois contracts, billing, and delivery of the accused product. 623 F.3d 440, 446 (7th Cir. 2010).

Liu does not controvert those contacts. Paragraphs 4 through 7 address training, fine-tuning, training-data storage, and five training-side acts; they do not deny Illinois subscriptions or billing, Bay Area engineering, U.S.-server deployment, or output-side processing and delivery. (Liu Decl. ¶¶ 4–7.) Paragraph 9 admits U.S.-stored inference-side account and usage data. Paragraphs 10, 13, and 14 state only that Skywork is "not aware of any record" involving a named Plaintiff's Illinois upload, marketing interaction, account, or transaction; they do not deny Illinois customers or commerce.[3] At most, Liu places training geography in dispute. If the Court deems that issue material, the remedy is the narrow discovery requested in Part I.E.

### C.  Kunlun's Own Conduct Supports Jurisdiction

Kunlun's "only one Kunlun-specific contact" premise cannot be reconciled with the Complaint or its own witness. (KM at 1.) Its witness, Lam, identifies himself as Kunlun's "Music AI & Foundation Model Tech Lead," corroborating Kunlun's direct technical role. (Lam Decl. ¶ 1.) The Complaint alleges Kunlun's ownership, control, and operation of Mureka; public claims that its AI division developed and promotes the Mureka model family; investor commercialization; a "controlled AI subsidiary" relationship; and Kunlun employees' authorship of the MusiCoT pipeline. (Compl. ¶¶ 41, 53–58, 69, 89–92.)

---

[3] Once a defendant submits jurisdictional evidence, a plaintiff may not rest on a specifically contradicted allegation alone; unrefuted affidavit facts are taken as true, while unchallenged allegations remain part of the prima facie record. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019); *Bank of Montreal v. SK Foods, LLC*, No. 09 C 3479, 2011 WL 4578357, at *3 (N.D. Ill. Sept. 30, 2011) (Gottschall, J.). Plaintiffs do not ask the Court, for purposes of Rule 12(b)(2), to reject Liu's statements about where initial training, fine-tuning, or training-data storage occurred. Jurisdiction is established by contacts Liu does not deny and partly admits, and training geography is not dispositive under *Ford*. This jurisdiction-only assumption does not make the declaration merits evidence under Rule 12(b)(6).

5

Kunlun says Plaintiffs do not allege that Mureka is "mentioned in or otherwise related to" the MusiCoT paper. (KM at 1.) The Complaint and the paper say otherwise, and Lam never addresses it. Paragraph 89 expressly alleges that Mureka's commercial models are "built on, derived from, or substantially similar to" the MusiCoT architecture and training pipeline. The linked paper itself benchmarks MusiCoT against "Mureka V5.5," discusses Mureka's performance by name, and cites the "Mureka team." (Compl. ¶ 89 & n.3; MusiCoT, tbl. 1, § 5.2 & ref. 68.) Skywork, meanwhile, assigns the MusiCoT allegations to Kunlun. (SM at 11.) Defendants may contest model lineage after discovery; they cannot erase the allegation or the paper's contents at the prima facie stage.

Plaintiffs allege specific conduct by Kunlun. *Gruca v. Alpha Therapeutic Corp.* rejected attribution only after a developed record showed ordinary investor oversight, but distinguished cases where the subsidiary marketed, sold, or serviced the parent's products in Illinois. 19 F. Supp. 2d 862, 864–71 (N.D. Ill. 1998). The Complaint pleads the product-specific facts *Gruca* found absent: Kunlun's AI division developed Mureka, promotes its releases as part of Kunlun's ecosystem, and calls Skywork its controlled subsidiary; Skywork then sells that model family in Illinois. (Compl. ¶¶ 53–58, 69.) *Howell v. Bumble, Inc.*, No. 21 C 6898, 2023 WL 6126492 (N.D. Ill. Sept. 19, 2023), and *IDS Life Insurance Co. v. SunAmerica Life Insurance Co.*, 136 F.3d 537 (7th Cir. 1998), involved passive ownership or ordinary supervision, not a parent's own research, product claims, and technical leadership. (KM at 6.) *Gruca* was decided on a developed evidentiary record, including depositions, annual reports, and affidavits. Kunlun asks for dismissal on the pleadings, before discovery, against control allegations the Lam Declaration never addresses.

Kunlun states the governing rule: jurisdictional allegations stand "unless controverted by

6

the defendant." (KM at 3.) Lam controverts almost none of the product-specific allegations. He does not deny that Kunlun developed, trained, funded, directed, or supervised the Mureka model family or SkyMusic; does not mention MusiCoT, DISCO-10M, or the 200,000-track corpus; and does not deny that Kunlun supplied models, weights, data, code, or technical direction to Skywork. Most of his denials are present-tense statements about Kunlun's current U.S. presence, ownership of consumer-facing channels, payments, and operation of Melodio. (Lam Decl. ¶¶ 4– 11.) Only paragraph 12 speaks historically, and it is narrow: Kunlun "has never downloaded recordings from YouTube to populate its training datasets." That does not deny procurement through vendors or affiliates, direction or funding of acquisition, receipt of a YouTube-derived corpus, or Skywork's downloading. Nor does it answer the pleaded MusiCoT pipeline. Paragraph 13's separate-books assertion addresses formal separateness, not who developed, supplied, or controlled the product. A declaration silent on the pleaded product conduct cannot eliminate it. Kunlun's waiver argument fails for the same reasons: the prima facie record includes the Complaint and the parties' submissions together, *Curry*, 949 F.3d at 392–93, and the Complaint expressly pleads Kunlun's direct participation, specific jurisdiction, Rule 4(k)(2), and the state claims' common factual basis (¶¶ 45–49), as Kunlun's own theory-by-theory attack confirms.

> **D.      Neither Defendant Names Another Forum, So National Contacts Control.**

Alternatively, Rule 4(k)(2) supplies jurisdiction over the federal claims if a foreign defendant is not subject to jurisdiction in any state. Under *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, a defendant can preclude the Rule's application by identifying a state where suit could proceed. 256 F.3d 548, 551–52 (7th Cir. 2001). Neither Defendant does so. Skywork names no state; Kunlun expressly says, "Kunlun has not stated where jurisdiction would be

proper." (KM at 7.) The remaining inquiry is therefore each Defendant's contacts with the United States as a whole. *See ISI Int'l*, 256 F.3d at 551-52.

Skywork's national contacts include its U.S. app-store publishing, U.S.-dollar subscriptions and contracts, U.S. server policy, Virginia endpoint, U.S.-stored inference-side data, and pleaded Bay Area Mureka personnel. (Compl. ¶¶ 42, 46(b), (o), (x), 57, 70; Liu Decl. ¶ 9.) Kunlun's are product-specific: its employees' model and corpus research, its public claims of developing and promoting the Mureka model family, and the pleaded supply and control relationship through which that product is commercialized nationwide by the entity Kunlun calls its controlled AI subsidiary. (Compl. ¶¶ 41, 53–58, 69, 89–92.) Those contacts relate to federal claims challenging the same corpus, model family, pipeline, and commercialization. *Ford*, 592 U.S. at 362–65. They make a prima facie national-contacts showing under Rule 4(k)(2); at minimum, they foreclose dismissal before discovery into the product and model flow.

### E. At Minimum, Narrow Jurisdictional Discovery Should Precede Dismissal.

The showing above far exceeds the colorable showing required for jurisdictional discovery.[4] If the Court finds a material jurisdictional gap, Plaintiffs request short, phased discovery limited to: (1) Kunlun–Skywork model, data, code, and control relationships; (2) U.S. personnel, infrastructure, and model-serving locations; and (3) training-data provenance and Illinois account, billing, and delivery records. Documents sufficient to show those facts and one Rule 30(b)(6) deposition per Defendant would resolve the issues without merits-wide discovery.

### II. The Complaint Gives Each Defendant Fair Notice.

Both motions invoke *Bank of America, N.A. v. Knight*: "Liability is personal," and each

---

[4] *Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) (colorable showing required). *Central States'* caution against imposing broad discovery on foreign defendants is answered by the limits described below.

defendant "is entitled to know what he or she did that is asserted to be wrongful." 725 F.3d 815, 818 (7th Cir. 2013). Skywork states the governing rule and its qualification: "Rule 8 permits collective references when context supplies each defendant's role, but it still requires facts showing why the moving defendant is liable." (SM at 24.) The Complaint does both. Skywork is pleaded as Mureka's developer and operator, contracting entity, and app-store publisher. (Compl. ¶¶ 42, 52, 57.) Kunlun is pleaded as Mureka's owner and controller; its employees authored the MusiCoT methodology; and Kunlun promotes successive releases and markets the product line to investors. (Compl. ¶¶ 41, 53–58, 89–92.) Paragraph 69 pleads Kunlun's "controlled AI subsidiary" description and the entities' shared branding and email domains. The counts incorporate those role-defining allegations. Against that factual backdrop, references to "Defendants" allege the joint operation of one product and internal pipeline conduct whose allocation between the related entities lies within their knowledge.

Defendants' briefs confirm that the notice was received. Kunlun quotes paragraph 52's allegation that Mureka was "developed and operated by SKYWORK AI PTE. LTD." and calls it "self-defeating." (KM at 4.) Skywork argues that the MusiCoT allegations "name Kunlun, not Skywork." (SM at 11.) Each Defendant identifies the allegations directed to the other when doing so advances its motion; neither may claim it cannot tell who allegedly did what. Whether discovery ultimately assigns a joint function to one entity rather than the other is a merits question, not a notice defect.

*Knight* is not analogous. It concerned an 87-page third complaint that still alleged only that "the defendants looted the corporation," after two unsuccessful amendments, even though the bank had access to the company's records and did not contend it needed discovery. 725 F.3d at 818. This is the first complaint; it identifies two related entities' product-specific roles, and the

9

remaining uncertainty concerns their internal division of functions. *Huon* rejects reading Rule 8, *Twombly*, and *Iqbal* to demand information needed to prove or refute otherwise plausible allegations when that information is typically available only to defendants. *Huon v. Denton*, 841 F.3d 733, 742–43 (7th Cir. 2016). This Court has applied the same principle where a plaintiff could not "specify which individual committed which parts of the alleged misconduct before the benefit of discovery." *Jordan v. City of Chicago*, No. 20 C 4012, 2021 WL 1962385, at *2 (N.D. Ill. May 17, 2021) (Gottschall, J.).

Rule 12(e) fails on the same record. Skywork prepared a detailed, count-by-count response to all fourteen claims. The count headings identify the Plaintiffs or subclasses asserting each claim and the statutory right at issue; Exhibit A identifies the works and the registration number or "AAA" designation for each; and paragraphs 41–42, 52–58, and 69 identify each Defendant's pleaded role. What remains, precisely how Defendants allocated acquisition, training, model transfers, processing, and delivery among themselves, is internal merits information, and *Chapman* warns that Rule 12(e) "cannot be used to turn federal civil procedure into a fact-pleading or code-pleading system." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848–49 (7th Cir. 2017). Dismissal there followed multiple failed pleadings and disobedience of a prior order. *Id.* Here, Defendants' briefs prove they understood the pleading.

Finally, Kunlun "expressly adopts and incorporates by reference" Skywork's Rule 12(b)(1) and Rule 12(b)(6) arguments. (KM at 10.) Parts III through VIII therefore answer both Defendants, without duplication.

## III.    Section 411(A) Requires Work-Specific Narrowing, Not Count-Wide Dismissal.

Section 411(a) is a mandatory precondition to suit on a "United States work," not a jurisdictional bar. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010); *Fourth Est. Pub.*

*Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301, 309 (2019). Skywork agrees that the remedy for noncompliance is "dismissal without prejudice." (SM at 5.) Plaintiffs accept that rule. The dispute is over scope: § 411(a) narrows work by work; it does not dismiss counts supported by registered or exempt works.

### A.    The Registered and Non-U.S. Works Defeat Count-Wide Dismissal.

Eighteen registered sound recordings ("Bad News," seven "Prequel to the Sound" recordings, and ten "This Road" recordings) preserve Counts I and II and registered-work predicates for Counts IX and X. (Ex. A ##1–8, 20–29.) The mixed-rights registrations discussed below separately preserve Counts IV and V. Skywork therefore cannot dismiss Counts I, II, IV, V, IX, or X "in their entirety." Its narrower formulation is correct: dismissal only "to the extent" a claim rests on an unregistered U.S. work. (SM at 6.) The registration status of absent class members' works is a Rule 23 question about subclass definition (Compl. ¶ 156(b), (d), (f)), not a Rule 12 ground for dismissing counts the named Plaintiffs' registered works support.

Skywork's Count III argument conflates two dates. Paragraph 156(b) defines the proposed class by whether a work was unregistered when Defendants *copied* it; § 411(a) asks whether registration had been made when the action *commenced*. (Registration timing matters separately under § 412, but only to statutory damages and fees.) A work copied while unregistered but registered before December 17, 2025 falls within the class definition and satisfies § 411(a). The motion therefore cannot dismiss Count III from the class definition alone. Whether a named work falls within that interval turns on work-specific copying and registration dates, not on the subclass's name.

Plaintiffs do not oppose dismissal without prejudice of copyright claims resting on U.S. works that remained unregistered when this action was filed. Exhibit A disclosed that posture

11

from the outset: it marked the affected entries "AAA" and explained that Plaintiffs had filed or would promptly file registration applications and would provide certificate details when issued. (Ex. A at 1 n.1.) That concession reaches no registered work, no non-U.S. work, and no DMCA or state-law claim.[5]

Nor does § 411(a) reach works that are not "United States works." For published works, § 101 makes first publication, not an owner's current domicile, the relevant inquiry. 17 U.S.C. §§ 101, 411(a). The Complaint recognizes that limitation (Compl. ¶¶ 269, 280). Its BBC Worldwide and film allegations make foreign first publication plausible, while nothing on the Complaint's face establishes that the works are United States works. (*Id.* ¶ 35), an inference drawn for Plaintiffs at this stage. Skywork never engages the statutory limitation and cannot obtain dismissal by assuming it away.

### B. The Certificates' Fields Preserve Counts IV and V.

Skywork's description of the certificates defeats its request. SRu 1-533-131 states authorship in "Sound Recordings and Musical Works (with or without lyrics)," and PAu002889490 is a "Music" registration stating authorship in "words & music." (SM at 8.) Registrations claiming musical works, words, and music preserve the lyric and composition claims for the works they cover, so Counts IV and V cannot be dismissed in their entirety. *Richardson v. Kharbouch* holds that a sound recording and the underlying composition are distinct copyrights, 156 F.4th 849, 853 (7th Cir. 2025), and Plaintiffs accept that distinction; it does not resolve what these two registrations cover, because their face fields expressly claim music, words, or musical works.

---

[5] Several registrations have issued since the Complaint was filed, and other applications remain pending. Rather than amend piecemeal as certificates issue, Plaintiffs will seek leave to replead all affected works in one amendment after the Copyright Office acts, on whatever schedule the Court directs. The concessions in this Part are made on those terms.

Plaintiffs do not oppose dismissal without prejudice of lyric and composition claims insofar as they presently rest solely on SR 845-765 or SRu 1-313-672, whose authorship fields state "sound recording." Composition applications remain pending, and Plaintiffs will seek leave to replead those claims through the single amendment described above.[6]

Finally, Skywork defines the proper limit of judicial notice. It asks the Court to notice the certificates' "existence and contents," but disclaims notice of "copyright scope" or any other disputed merits fact. (SM at 4.) The Court may read the certificates' face fields; it cannot convert that limited notice into a merits adjudication of disputed coverage, particularly when the deposits are absent. And Skywork's request that surviving claims be confined to works "supported by evidence" applies the wrong standard. (Id. at 8.) Rule 12 tests the pleading, not Plaintiffs' proof.

## IV.    The Complaint Expressly Pleads Domestic Conduct.

Skywork accepts the governing framework: the question is whether conduct relevant to the statute's focus occurred in the United States. (SM at 8–9, 12.) The Complaint answers expressly. Paragraph 46(s) alleges that "the copying, processing, and delivery of Plaintiffs' and Class members' recordings, lyrics, and vocal identifiers occur, in significant part, on U.S. infrastructure." Paragraph 46(t) ties the same U.S.-facing models and pipelines to ingestion, copying, processing, and exploitation. The alleged Bay Area Mureka operation, U.S. servers, and U.S. endpoint corroborate those location allegations. (Compl. ¶¶ 46(o), (s)–(t), (x), 70.) Because this is a Rule 12(b)(6) argument, Liu's declaration is not merits evidence.

Skywork reaches the opposite conclusion by editing the pleading. It omits paragraph

---

[6] Copyright Office rules permit one Class SR application to register both a sound recording and the musical work it embodies where the same application claims both works, same claimant owns both, and both are embodied in the same phonorecord. 37 C.F.R. § 202.3(b)(1)(iv)(A)-(C); U.S. Copyright Office, Compendium of U.S. Copyright Office Practices §§ 504, 803.8(A) (3d ed. 2021). Whether these two registrations did so turns on the complete registration materials, which are not before the Court. Plaintiffs preserve any broader coverage those materials show, while conceding without prejudice the composition claims presently supported only by certificates whose face fields state sound-recording authorship.

13

46(o) from its survey and reduces paragraph 46(s) to "user-initiated service traffic." (SM at 10.) But paragraph 46(s) identifies the act (copying, processing, and delivery); the objects (Plaintiffs' recordings, lyrics, and vocal identifiers); and the location (U.S. infrastructure). Paragraph 46(t) is supported by the pleaded domestic personnel, server, and endpoint facts. Actor allocation is addressed in Part II, not by rewriting the alleged location.

Counts I and II also plead domestic copies independent of the first training run: retained-corpus reproductions for evaluation, fine-tuning, partner, backup, and engineering uses, and transfer-created server copies, caches, shards, and checkpoints. (Compl. ¶¶ 104–09, 170–72, 182–87.) *Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.* does not impose a contrary pleading rule. It was a post-trial damages decision in which the evidence could not show whether the accused download came from an Illinois server or a foreign mirror. 108 F.4th 458, 473–75 (7th Cir. 2024). Here the Complaint expressly alleges that copying and processing occurred on U.S. infrastructure. *Motorola* required proof after trial; it did not require routing logs in a complaint. Initial copying abroad, even if later proved, would not erase separately pleaded domestic reproductions.[7] Where facts sit exclusively with Defendants, the Complaint says so and pleads on information and belief, as with the recipients, mechanisms, and volumes of Defendants' dataset distributions, which are "peculiarly within Defendants' possession and those of its partners." (Compl. ¶ 185.) Rule 8 permits this. *See Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005) ("Where pleadings concern matters peculiarly within the knowledge of the defendants, conclusory pleading on 'information and belief' should be liberally viewed."

---

[7] Skywork's demand that Plaintiffs plead where training occurred proves the asymmetry: it faults Plaintiffs for not pleading facts while handing the Court, on its other motion, a declaration purporting to state where those facts are not. Facts a defendant can attest to are facts discovery can test, not facts a plaintiff must plead first. Dismissal would require the Court to credit Defendants' internal server geography against the pleader, on a record containing their own admission that the service runs, in part, on "local servers in the United States." Rule 12 does not permit that.

(citation and internal quotation marks omitted)). *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088 (9th Cir. 1994) and *Rundquist* addressed secondary liability predicated only on acts occurring entirely abroad; they do not apply where domestic reproduction is pleaded.

The DMCA counts use the same territorial pipeline. Count VI alleges CMI removal during the domestic processing described above; Count VII alleges circumvention used to acquire copies then ingested and processed through that pipeline; and Count VIII alleges provision and distribution of challenged CMI through outputs delivered on U.S. infrastructure. (Compl. ¶¶ 46(s), 225–28, 238–41, 250–57.) Their elements are addressed in Part V.

## V.      The Complaint States Each DMCA Claim.

### A.      Count VI Identifies the CMI, the Copies, the Removal, and the Scienter.

Skywork says Plaintiffs identify no particular CMI, source copy, or removal act. (SM at 13.) The Complaint identifies the CMI categories and carriers, the source-copy category, and the removal mechanism. Paragraphs 225 and 226 enumerate titles; songwriter, performer, producer, and publisher names; ISRC and ISWC codes; watermarks; copyright notices; and licensing information conveyed in ID3 tags, embedded watermarks, and audio-file headers, and allege that Plaintiffs' recordings, identified in Exhibit A, carry that embedded CMI. The source copies are the recording and lyric files Defendants acquired before preprocessing, and paragraph 228 pins the removal to the moment Defendants "copied, converted, standardized, segmented, and ingested" those files.

The removal process is not a black box. Kunlun disclosed Demucs vocal separation, ASR transcription, structural segmentation, and ten-second audio analysis. (Compl. ¶ 90.) The Complaint alleges what those steps do to CMI: conversion strips file metadata, standardization removes residual headers, and segmentation, ASR, and tokenization detach audio and lyric

15

content from track-, writer-, and publisher-level attribution. (*Id.* ¶¶ 111–18, 129–34.) Paragraphs 118 and 134 allege the resulting design directly: original CMI is not preserved or restored after ingestion, and the architecture ensures that it is "stripped at ingestion and kept stripped." That is a pleaded removal mechanism, not an assertion that metadata somehow disappeared.

Skywork's authorities address different pleadings or a different theory. *Personal Keepsakes* concerned a generic copyright notice in a website footer, not metadata embedded in the copied work. *Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp. 2d 920, 929 (N.D. Ill. 2013). Even *Andersen*, an out-of-circuit decision demanding identification of the type of CMI and the removal event, is satisfied; paragraphs 225–28 supply both. *Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853, 872 (N.D. Cal. 2023). The identicality cases are further removed. Count VI principally pleads removal under § 1202(b)(1), a violation complete at removal, when Defendants converted and ingested Plaintiffs' source files. Whether a later output is identical to the source could bear, if at all, on a downstream § 1202(b)(3) theory; it does not erase the source-removal claim. *Doe 1*, *Design Basics*, and *Crowley* therefore do not defeat Count VI. *Doe 1 v. GitHub, Inc.*, 2024 WL 235217, at *8–9 (N.D. Cal. Jan. 22, 2024); *Design Basics, LLC v. WK Olson Architects, Inc.*, No. 17 C 7432, 2019 WL 527535, at *4–5 (N.D. Ill. Feb. 11, 2019); *Crowley v. Jones*, 608 F. Supp. 3d 78, 90 (S.D.N.Y. 2022).

Both scienter requirements are plausibly pleaded. Intentional removal follows from the design: a pipeline constructed to detach expressive content from the metadata identifying its owners. (Compl. ¶¶ 118, 134.) Knowledge that removal would facilitate or conceal infringement follows from its function: Defendants anonymize the source material, use it to build Mureka, and sell the results as "100% royalty-free" and "cleared for commercial use," with downstream exploitation "enabled and concealed by" the prior removal. (*Id.* ¶¶ 86, 135, 137.) Skywork's

16

authority confirms that § 1202(b) reaches concealment of the defendant's own infringement. *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171–73 (2d Cir. 2020); *see Sun v. Xie*, 2025 WL 2467497, at *5 (N.D. Ill. Aug. 27, 2025). Rule 12 requires a plausible inference of knowledge, not proof from Defendants' internal pipeline records.

### B. Count VII Pleads Direct Circumvention and Needs No Trafficking Element.

Skywork argues that the Complaint identifies no measure, bypass, or technology "primarily designed" for circumvention. (SM at 14.) The first two assertions disregard the pleading; the third attacks a theory Count VII does not need. The Complaint identifies the protected works: Plaintiffs' recordings uploaded to their official YouTube channels. (Compl. ¶ 95.) It identifies the measure: YouTube's rolling-cipher process, which Plaintiffs authorized YouTube to apply and which gates retrieval of the underlying media data; requests lacking a valid cipher-derived signature are denied. (*Id.* ¶¶ 96–98.) And it identifies the bypass: stream-ripping and signature-decoding routines operating outside the authorized player to obtain unrestricted audio files, in violation of § 1201(a)(1)(A). (*Id.* ¶¶ 94, 99–102, 237–39.) The "primarily designed" requirement belongs to trafficking under §§ 1201(a)(2) and (b)(1), which the Complaint separately alleges (*id.* ¶¶ 240–41), but Count VII proceeds under § 1201(a)(1) regardless.

Skywork's cases do not hold that a measure ceases to control access because the owner permits access through the authorized process. The distinction is between access through the gate and access without it: § 1201(a)(3)(B) asks whether access ordinarily requires an owner-authorized "process or treatment," and the Complaint alleges that YouTube returns the media data only upon a valid cipher-derived signature. (Compl. ¶¶ 96–100.) *CouponCabin LLC v. Savings.com, Inc.*, 2016 WL 3181826, *6 (N.D. Ind. June 8, 2016) involved a free public website

17

that remained reachable through unblocked servers, with no process required to gain access. *Agfa Monotype Corp v. Adobe Systems, Inc.*, decided on summary judgment, involved passive embedding bits that never prevented access to the font data. 404 F. Supp. 2d 1030, 1036 (N.D. Ill. 2005). Neither involved a process alleged to gate retrieval of the media itself. *Green v. U.S. Department of Justice*, 111 F.4th 81 (D.C. Cir. 2024) describes streaming services that permit authorized access while deploying technological protections against unauthorized copying, 111 F.4th at 89, and *UMG Recordings, Inc. v. Kurbanov,* 2021 WL 6492907 (E.D. Va. Dec. 16, 2021)*, report and recommendation adopted*, 2022 WL 20417526 (E.D. Va. Feb. 10, 2022), confirms the narrow factual point that YouTube's ordinary service does not permit downloads and places technological obstacles before the media-file URLs. 2021 WL 6492907, at *4–5, *adopted*, 2022 WL 20417526. The proprietary ripper, vendor, or exact code path is not an element; Rule 8 does not require defendant-held implementation details before discovery. (Compl. ¶¶ 238–41); *see Huon v. Denton*, 841 F.3d 733, 742–43 (7th Cir. 2016).

### C. Count VIII Identifies Deliberate False CMI Practices and Observed Outputs.

Skywork's assertion that Count VIII identifies no output or false CMI misstates the Complaint. (SM at 12–13.) Paragraph 250 identifies four deliberate forms of output CMI: a Mureka source watermark; public "by [username]" lines, including "Ballad of the Bold" by "Mudrat"; ownership certificates and "Owned by Mureka" or "Owned by [User]" labels; and representations that the output carries unrestricted commercial rights. (Compl. ¶ 250(a)–(c), (e).) Those are source, authorship, ownership, identifying-symbol, and terms-of-use information within § 1202(c). The Complaint does not allege that every username or Mureka label is inherently false; it alleges that the designations become false when attached to an output containing protected expression owned by Plaintiffs or class members, and that Defendants

18

replace authentic source CMI with those designations and distribute the resulting files through Mureka's site, applications, APIs, and integrations. (*Id.* ¶¶ 251–54.)

Paragraph 250(d) makes the mechanism concrete. Mureka outputs "have been observed to reproduce" the spoken producer tag "CashMoneyAP," though that producer had no role in the generated track. CashMoneyAP is not a named Plaintiff, but the allegation is an observed instance of source-identifying expression from a training recording reappearing in a Mureka output, falsely identifying the new track's source. It corroborates both memorization and the pleaded mechanism.

Skywork's distinct-work cases do not immunize this conduct. Count VIII does not rest on Defendants placing their name on an independently authored work; it challenges automatic author, owner, and usage-rights CMI applied to outputs alleged to embody expression owned by someone else. On such an output, a certificate asserting that Mureka or the user owns the track conveys false CMI about that copy. *Crowley* and *Design Basics* did not address that combination. Knowledge and intent are pleaded separately: Defendants knew the replacement CMI was false because they designed Mureka to ingest and reproduce protected source material, removed the authentic CMI revealing its origin, and labeled the outputs as someone else's (¶ 252); the labels facilitate monetization while concealing the source copying (¶ 253); and the practice was intentional and revenue-driven (¶ 255).

Skywork controls the records showing which labeled outputs contain which source expression. Plaintiffs nevertheless plead more than asymmetry: their works entered the corpus; Mureka has been observed reproducing source-identifying expression from a training recording; and Plaintiffs allege that Mureka automatically attaches one or more challenged sources,

authorship, ownership, or usage-rights designations to its outputs. That chain makes Count VIII plausible without Skywork's private logs.

## VI.     The Complaint Pleads Both Secondary Liability Claims

### A.     Mureka's Sound-Alike Marketing Pleads Inducement, and Its Bespoke Fine-Tuning Offering Supports the Alternative Tailoring Theory. (Count IX)

*Cox* holds that a provider is contributorily liable when it intends its service to be used for infringement, shown either through affirmative inducement or a service tailored to infringement. *Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959, 964 (2026). Count IX principally pleads inducement and separately pleads a distinct fine-tuning offering supporting the alternative tailoring theory.

The inducement is Mureka's sales pitch. Mureka promises content-service customers music "similar" in "style, vocals, and instrumentation" to "trending tracks," expressly offering "sound-alike material" that reduces the licensing costs those customers would otherwise pay human artists and labels. (Compl. ¶ 64.) Its consumer features include "AI Style-Matching Generation," which "mirrors" an uploaded favorite track, and "Generate Similar Songs." (*Id.* ¶ 110.) Defendants market those capabilities as the way to avoid "copyright headaches" and the need to license existing music. (*Id.* ¶¶ 66, 86.) This is not an allegation that emulating an unprotectable genre infringes; it is an allegation that Defendants sell reference-track matching and sound-alike vocals as substitutes for licenses to the targeted music. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.* identifies "advertising an infringing use or instructing how to engage in an infringing use" as evidence of intent to infringe. 545 U.S. 913, 936–37 (2005). Whether particular outputs copy protectable expression is a merits question; the marketing supports the required purpose. The *Cox* plaintiffs lost the inducement pathway for want of any promotion evidence; here, the promotion itself is pleaded. The Seventh Circuit asks the same

question: "personal conduct that encourages or assists the infringement" supports contributory liability, *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 757–58 (7th Cir. 2012) (cited at SM at 15), and marketing a product as the way to avoid licensing is such conduct.

Tailoring is pleaded in the alternative. *Cox* defines a tailored service as one not capable of substantial or commercially significant noninfringing uses, 146 S. Ct. at 967, and Plaintiffs do not contend that the Mureka platform as a whole fails that test. But the tailoring inquiry asks about the service sold. Cox escaped because it "simply provided Internet access"; Mureka's fine-tuning offering is the opposite of general-purpose access, a separately sold service in which a client supplies at least 200 tracks in a particular style and Mureka builds a dedicated model that reproduces that style at scale. (Compl. ¶ 63.) Read with the allegations that Defendants operate "without licensing constraints as a deliberate strategy" and sell sound-alike generation as a licensing substitute (*id.* ¶¶ 64, 277), that bespoke offering plausibly pleads tailoring. In all events, substantial lawful uses do not defeat independently pleaded inducement. *Grokster*, 545 U.S. at 934–37.

The direct-infringement predicate does not depend on a user output. Third-party data suppliers, the pleaded Unknown Defendants who "collected, scraped, copied, or acquired" recordings for Defendants' training data, reproduced and distributed Plaintiffs' recordings and lyrics to Defendants for ingestion without license. (Compl. ¶¶ 43, 260(b).) The Complaint additionally alleges that end users generate and disseminate outputs substantially similar to Plaintiffs' works on YouTube, TikTok, and Spotify, and that distribution partners reproduce those outputs through integrated channels. (*Id.* ¶¶ 260(a), (c), 265.) The Complaint does not yet identify an output substantially similar to a named Plaintiff's work, but that is not the only predicate, and the user-output allegations are plausible from Mureka's scale, reference-track

21

design, sound-alike marketing, and observed reproduction of source-identifying audio from a training recording. The prompt, output, and distribution records identifying particular instances are Defendants'. Finally, Count IX does not rest on the knowledge-plus-inaction theory *Cox* rejected: the knowledge and willful-blindness allegations (¶¶ 261–62) reinforce the inference from Defendants' affirmative design and marketing; they do not substitute for inducement.

### B. Defendants Control the Engine, and the Advertised Capability Is the Draw. (Count X)

Count X rests on the same third-party infringements and pleads concrete control. Defendants operate and configure the servers, models, and interfaces that generate the challenged audio; select and update corpora and guardrails; implement prompt and output filters; control users, outputs, APIs, and distribution integrations; and can block or suspend particular accounts, prompts, and outputs. (Compl. ¶ 274.) They also hold contractual rights to direct, reject, or terminate the data suppliers' work. (*Id.* ¶ 275.) That is both the legal right and the practical ability to limit the infringement. *VHT, Inc. v. Zillow Grp., Inc.*, an out-of-circuit post-trial decision, involved photographs third parties uploaded with certifications of rights and a trial record that failed to show Zillow could identify infringing photographs among the uploads. 918 F.3d 723, 745–46 (9th Cir. 2019). Here, no accused output exists unless Defendants' engine generates, filters, and delivers it, and the supplier relationships are ones Defendants can direct and terminate. This is not a passive platform.

The financial-benefit allegations identify a causal draw, not generalized revenue. Defendants sell usage-based subscriptions whose value rises with output volume and commercial utility; they advertise sound-alike substitutes for trending and reference tracks; and they heighten output "fidelity and recognizability" to increase substitutability, a capability paragraph 276 alleges attracts and retains paying users and drives revenue. (Compl. ¶¶ 64, 110, 276–77.) That

22

satisfies even the showing *Perfect 10, Inc. v. Giganews, Inc.* demanded on summary judgment: there, the plaintiff supplied no evidence that anyone subscribed to a general Usenet service to obtain its particular images. 847 F.3d 657, 673–74 (9th Cir. 2017). Here, the capability advertised to attract customers, high-fidelity sound-alike music replacing licensed works, is the capability that infringes and displaces Plaintiffs' catalogs. And *Perfect 10* was an evidentiary holding; Skywork cites no Supreme Court or Seventh Circuit authority requiring a complaint to identify a particular customer drawn by infringement of a particular work. Paragraphs 64, 110, and 276–77 plausibly allege the causal draw, which is all Rule 12 asks.

## VII.    The Illinois Statutory Claims Are Well Pleaded.

### A.    Count XI Pleads Each BIPA Subsection It Invokes.

Skywork does not contend that AI-derived voice data can never be a BIPA "voiceprint." (SM at 17.) The Complaint pleads the identifying data in technical terms: for each Illinois Plaintiff, Defendants allegedly "computed and stored speaker-embedding vectors—fixed-length numerical templates derived from spectral features that uniquely identify the individual across recordings," permit "re-identification," and distinguish one speaker from another. (Compl. ¶ 286.) *Rodriguez v. ByteDance, Inc.* treats a speaker-identification capability as a plausible voiceprint where the technology can identify a speaker and link the template to a real person. No. 23 CV 4953, 2025 WL 672951, at *17-18 (N.D. Ill. Mar. 3, 2025). Mureka's policy corroborates the underlying capability by acknowledging that it processes "unique voice samples" and generates outputs containing a user's "unique vocal characteristics." (Compl. ¶ 46(m).) The allegation is individualized: the embeddings were computed "[f]or each Illinois Plaintiff" from recordings of their own voices, the Illinois-recorded works Exhibit A identifies, and a template derived from a plaintiff's vocal performance identifies that plaintiff. (Compl. ¶ 286; Ex. A ##1–

38.) How Skywork's systems performed the extraction is a fact recorded in those systems, not a pleading element (SM at 17). *See Huon*, 841 F.3d at 742–43. *Zellmer* is a Ninth Circuit reading of the Illinois statute; whatever its persuasive weight, the capability to identify is pleaded here, on facts held in Defendants' systems. (SM at 17 (citing *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117 (9th Cir. 2024))).

*Section 15(b) (collection without consent)*. Paragraph 286 pleads the active step Skywork says is missing. Defendants did not receive a finished biometric record from someone else; they isolated vocals from recordings and computed and stored new speaker-embedding templates from the extracted spectral features. (Compl. ¶¶ 90, 286.) This is extraction, not passive receipt. See *Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 841–42 (N.D. Ill. 2021) (*Heard II*) (amended complaint plausibly alleged active collection through scanning, feature extraction, and template creation and storage).

*Section 15(a) (unlawful retention).* Count XI alleges individualized, indefinite retention of Plaintiffs' voiceprints in training data and model artifacts, without the required retention-and-destruction schedule. (Compl. ¶¶ 290–91, 294.) That is the wrongful-retention theory recognized in *Fox*, not the publication-only theory rejected *in Bryant v. Compass Group USA, Inc.*, 958 F.3d 617 (7th Cir. 2020). *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1154–56 (7th Cir. 2020). Both statutory elements are thus pleaded against the operators of the pipeline: no schedule was ever developed or followed (¶ 291), and the identifiers are retained past any authorized time (¶ 290); what injures Plaintiffs, and what *Fox* holds concrete, is the retention. A defendant that computes and stores templates in its own corpora exercises the "dominion or control" *Heard I* identified as the relevant possession standard. *Heard v. Becton, Dickinson & Co.*, 440 F. Supp.

3d 960, 968 (N.D. Ill. 2020) (*Heard I*); *see* Compl. ¶¶ 286, 290, 294. The collection dates, asserted purpose, and retention period are in Defendants' records.

Section 15(c) (profiting from biometric data). The Complaint does not rebrand general software revenue as biometric profit. Paragraph 294 alleges the transaction theory *Rodriguez* found missing: biometric-laden corpora and evaluation artifacts made available within commercial contractor and partner relationships. Defendants also embedded the voiceprints in model parameters and sell a service marketed to "clone any voice" and generate outputs reproducing Plaintiffs' distinctive voices. (Compl. ¶¶ 110, 292, 294.) The partner access is the commercial sharing; the voice-replication feature is why the biometric asset itself, not unrelated software, is what is valuable. Section 15(c)'s "otherwise profit" language reaches commercial transactions in which access to biometric data is shared or provided for value, *Rodriguez*, 2025 WL 672951, at \*18; *Davis v. e.l.f. Cosmetics, Inc.*, No. 22 C 5069, 2024 WL 2722663, at \*8 n.4 (N.D. Ill. May 28, 2024), and what Defendants received in exchange lies in their agreements and access records. Nor is this the injury-free class deliberately pleaded in *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1247–49 (7th Cir. 2021): paragraph 295 alleges loss of control, identity-misuse risk, and diminished licensing opportunities in Plaintiffs' voices, consequences of the challenged commercialization, not an abstract interest in compliance.[8]

Section 15(d) (unlawful disclosure). Paragraph 294 identifies the data, the recipients, and the mechanism: voiceprints embedded in retained corpora and evaluation artifacts, made accessible to outside contractors and partners. Those recipients are distinct from Defendants, and

---

[8] If the Court were to disagree and find the § 15(c) theory short of Article III injury, the dismissal would be jurisdictional and without prejudice. The claim would not be adjudicated, but could be refiled in Illinois state court, where the injury requirement Skywork invokes does not apply. *Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶¶ 33–34 (a BIPA plaintiff is "aggrieved" by the statutory violation itself). Skywork's standing argument thus chooses the forum; it does not end the claim.

repository access is the alleged dissemination. That is materially different from *Rodriguez*, where neither the biometric information nor a recipient was identified, and from *Heard I*, where the original complaint supplied no factual basis to suspect disclosure. 440 F. Supp. 3d at 969. The contractors' and partners' identities are in Defendants' vendor and access-control records.

*Territoriality.* The territorial issue is factual. The BIPA Plaintiffs live and perform here; Woulard records his vocal performances in Illinois and the Burjeks recorded their catalog at their Shorewood studio (Ex. A ##1–38); the identifying embeddings were derived from those Illinois recordings; and the Complaint alleges that the capture and resulting injuries occurred "primarily and substantially in Illinois." (Compl. ¶¶ 18, 20, 24, 46(m), 49, 286, 288; Ex. A ##1-38.) Where Defendants obtained, computed, stored, and disclosed the embeddings depends on their and their vendors' systems and records, and resolving the *Avery v. State Farm Mutual Automobile Insurance Co.*, 835 N.E.2d 801 (Ill. 2005) weighing against Plaintiffs now would require drawing inferences about that internal geography against the Complaint. *Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 WL 4099846, at *5–6 (N.D. Ill. Sept. 15, 2017) (Gottschall, J.) (declining to resolve BIPA extraterritoriality at Rule 12 where the photograph was uploaded from Illinois and the locations of scanning and storage turned on facts about the defendant's technology); *see also In re Clearview AI, Inc., Consumer Privacy Litig.*, 585 F. Supp. 3d 1111, 1121–22 (N.D. Ill. 2022) (BIPA extraterritoriality is a "fact intense inquiry" best left for summary judgment).

**B.     Count XII Pleads a Digital Replica (§ 30(b)) and Commercial Identity Use (§ 30(a)).**

Skywork analyzes Count XII as a § 30(a)-only claim, but the count invokes IRPA generally and pleads § 30(b)'s facts: AI-generated simulations of Plaintiffs' voices fixed in outputs, public dissemination through named platforms, Illinois distribution, lack of consent, and

ongoing conduct. (Compl. ¶¶ 300(b), 302–03, 307, 310.) Complaints plead facts, not subsection labels. *Johnson v. City of Shelby, 574 U.S. 10, 11–12 (2014) (per curiam).* Operating the generator that creates and delivers those oututs and promotes their public dissemination plausibly supports an inference of actual knowledge; § 30(b) contains no commercial-purpose element. *See D'Ambrosio v. Meta Platforms, Inc.,* 176 F.4th 928, 934-36 (7th Cir. 2026).

Section 30(a) survives independently because the alleged identity-bearing capability is the feature used to market subscriptions and paid tiers, not an identity merely adjacent to an unrelated product. (Compl. ¶¶ 300(b), 303.) The Act expressly includes voice, and the Complaint alleges uniquely identifiable voices, timbre, tags, and vocal characteristics. Whether a reasonable listener would perceive a particular Plaintiff's voice in an output is an evidentiary question.

C.     **Count XIII Targets Ongoing Deception in Plaintiffs' Market.**

Count XIII is injunctive-only and directed to ongoing practices: orders stopping unqualified "original," "royalty-free," "fully cleared," and commercially safe representations; requiring disclosures; filtering confusing outputs; and adding provenance information. (Compl. ¶ 320.) That architecture answers *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014), whose plaintiff was a one-time purchaser protected by his own knowledge from being deceived again. Plaintiffs are musicians and rights-holders whose licensing market and goodwill remain exposed each time Defendants make the challenged representations to users, licensees, distributors, and platforms. (Compl. ¶¶ 312, 315–17.) Awareness does not prevent continuing diversion of demand, suppression of licensing prices, or sponsorship confusion.

Rule 9(b) applies only to allegations sounding in fraud. *Kahn v. Walmart Inc.*, 107 F.4th 585, 594–95, 601–02 (7th Cir. 2024). The source, sponsorship, approval, and affiliation-confusion theories under § 2(a)(2)–(3) therefore proceed under Rule 8. *ATC Healthcare Servs.,*

27

*Inc. v. RCM Techs., Inc.*, 192 F. Supp. 3d 943, 953 n.3 (N.D. Ill. 2016); *Dynamic Fluid Control (PTY) Ltd. v. Int'l Valve Mfg., LLC*, 790 F. Supp. 2d 732, 738–39 (N.D. Ill. 2011). The separate clearance theory satisfies even Rule 9(b): Mureka repeatedly represents that its outputs are "100% royalty-free," carry "full commercial rights," are "copyright-friendly," and are "cleared for commercial use" (Compl. ¶¶ 42, 52, 65, 82–86); across its main marketing site, landing pages, FAQs, and ownership certificates (*id.* ¶¶ 65, 82–83); to users, licensees, platforms, and the public; misleading because Defendants omit the system's unlicensed provenance and the resulting affiliation-confusion and rights-encumbrance risks (*id.* ¶¶ 314(b), 315); and repeated and ongoing (*id.* ¶¶ 65, 319–20).

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003) bars only a creative-authorship or pure reverse-passing-off theory, which Plaintiffs do not press. Count XIII proceeds on sponsorship, approval, affiliation, and representations about whether Mureka's own outputs are licensed, cleared, and commercially safe. (Compl. ¶ 314(a)–(c).)

### D.     Count XIV Preserves Restitution Tethered to Surviving Wrongs.

Plaintiffs do not defend unjust enrichment as a freestanding Illinois tort. Count XIV is pleaded in the alternative and tethered to § 1202, BIPA, and IRPA violations. (Compl. ¶¶ 322, 325, 329.) Plaintiffs therefore preserve restitutionary remedies tied to those surviving predicates. Preemption is addressed in Part VIII.

### VIII.  The Copyright Act Does Not Preempt The State-Law Theories Plaintiffs Press.

Factual overlap is not preemption. Section 301 asks whether the state-law right asserted is equivalent to a right under § 106, not whether the same recordings appear in both claims. *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 500–01 (7th Cir. 2011); *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910–11 (7th Cir. 2005). Skywork never answers that question. It restates each claim as

28

copyright until the restatement sounds like copyright, then calls the result equivalent. Skywork challenges IRPA, UDTPA, and unjust enrichment, but not BIPA. (SM at 23–24.) Correctly so: biometric privacy duties are not copyright rights. That restraint undercuts what remains, because the identity carried in a voice is no more a § 106 right under IRPA than under BIPA.

*IRPA. Toney* held that IRPA protects the person's identity, not the copyrighted work in which that identity appears: a persona "is not authored and it is not fixed," and its unauthorized commercial use is not equivalent to a § 106 right. 406 F.3d at 908–11. Count XII likewise targets Plaintiffs' voices and identifying vocal attributes across works, including replicas fixed in newly generated recordings, not ownership of any source recording. (Compl. ¶¶ 300(b), 303–04.) Section 30(b)'s digital-replica and public-dissemination requirements are not elements of copyright infringement. Section 114(b) confirms the gap: sound-recording copyright protects duplication of the recorded sounds, not a new recording that independently imitates or simulates them, 17 U.S.C. § 114(b); *Richardson*, 156 F.4th at 858, so a synthetic replica can appropriate identity without infringing any sound-recording copyright. *Toney* rejected a categorical reading of *Baltimore Orioles*, 406 F.3d at 910–11, and *Laws v. Sony Music Entertainment, Inc.*, an out-of-circuit decision, involved exploitation of the plaintiff's actual copyrighted recording, not a generated replica of her persona. 448 F.3d 1134, 1141–45 (9th Cir. 2006).

*UDTPA.* Count XIII requires a market-facing representation likely to confuse buyers about sponsorship, approval, affiliation, or legal clearance; unauthorized reproduction alone proves none of those elements. (Compl. ¶¶ 314(a)–(c), 318.) A defendant that misrepresents licenses it does not hold commits the wrong having copied nothing. To the extent Skywork's authorities bar a pure reverse-passing-off theory, resting only on copying and crediting, Plaintiffs do not press it. *See supra* Part VII.C.

*Unjust enrichment.* Count XIV is pleaded in the alternative and tethered to CMI removal under § 1202, nonconsensual biometric transactions and disclosures under BIPA, and identity appropriation under IRPA. (Compl. ¶¶ 322, 325, 329.) Each predicate requires conduct or protects an interest beyond § 106; restitution for those wrongs is not equivalent to copyright merely because copyrighted recordings appear in the factual chain. To the extent Count XIV could be read to seek avoided licensing costs or model value from copying alone, Plaintiffs do not press it.

### CONCLUSION

Defendants built a commercial music engine from other people's recordings, sold it into this District, and now contend that no American court may hear the case. Skywork denies this forum, and Kunlun names none. The motions reach that result by shrinking the Complaint and demanding proof only discovery can supply. The motions should be denied, subject only to three narrow concessions. Plaintiffs do not oppose: (1) dismissal without prejudice of copyright claims resting on United States works that remained unregistered when this action was filed; (2) dismissal without prejudice of the lyric and composition claims that presently rest solely on SR 845-765 or SRu 1-313-672, with Counts IV and V otherwise proceeding on the mixed-rights registrations (*supra* Part III.B); and (3) dismissal of Count XIV only insofar as it is construed as a freestanding unjust-enrichment cause of action, preserving restitution tied to the surviving predicates. Plaintiffs will seek leave to file one consolidated amendment after the Copyright Office acts, on the schedule the Court directs. If the Court concludes that any jurisdictional fact remains genuinely open, it should order the targeted discovery described in Part I.E before dismissing either Defendant. Skywork's alternative request under Rule 12(e) should be denied.

Dated: August 12, 2026

Respectfully submitted,

LOEVY & LOEVY

/s/ Ross Kimbarovsky

_____

Ross Kimbarovsky (6229590)
ross@loevy.com
Jon Loevy (6218524)
jon@loevy.com
Michael Kanovitz (6275233)
mike@loevy.com
Matthew Topic (6290923)
matt@loevy.com
Aaron Tucek   (98624)
aaron@loevy.com
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
312.243.5900 (phone)
312.243.5902 (fax)

*Attorneys for Plaintiffs Attack the Sound LLC,
David Woulard, Stan Burjek, James Burjek, Berk
Ergoz, Hamza Jilani, Maatkara Wilson, Arjun
Singh, Magnus Fiennes, and Michael Mell*