**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ATTACK THE SOUND LLC, an Illinois limited liability company, DAVID WOULARD, STAN BURJEK, JAMES BURJEK, BERK ERGOZ, HAMZA JILANI, MAATKARA WILSON, ARJUN SINGH, MAGNUS FIENNES, and MICHAEL MELL, each individually and on behalf of all others similarly situated, | ) | Case No. 25-cv-15354 |
| Plaintiffs, | ) | District Judge Joan B. Gottschall |
| v. | ) | Magistrate Judge Keri L. Holleb Hotaling |
| KUNLUN TECH CO., LTD., SKYWORK AI PTE. LTD., and UNKNOWN DEFENDANTS, | ) | |
| Defendants. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS**
**SKYWORK'S AND KUNLUN'S JOINT MOTION TO STAY DISCOVERY**

# TABLE OF CONTENTS

Page

INTRODUCTION ........ 1

LEGAL STANDARD ........ 3

ARGUMENT ........ 3

A. No Outcome of the Pending Motions Eliminates the Need for Discovery, So a Stay Would Not Simplify the Case. ........ 3

1. Registered works anchor six counts under any Section 411(a) ruling. ........ 4

2. The record does not support the premise that the jurisdictional motions will end the case. ........ 4

3. Rule 12(e) relief would produce repleading, not less discovery. ........ 5

4. What remains is the rationale this District has rejected. ........ 5

B. A Stay Would Freeze the Very Discovery the Court May Need to Decide the Rule 12(b)(2) Motions. ........ 6

C. Defendants Identify No Concrete Burden That the Court's Ordinary Tools Cannot Manage Effectively and Efficiently. ........ 7

D. A Stay Would Impose Concrete, Compounding Prejudice. ........ 8

E. Defendants' Authorities Support Tailoring, Not an Automatic Case-Wide Freeze. ........ 11

F. At Most, the Court Should Order Proportionate Sequencing Under Its Own Procedures, Not a Freeze. ........ 12

1. Case management. ........ 13

2. Jurisdictional discovery, if needed. ........ 13

3. Preservation and ESI planning. ........ 14

CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aland v. U.S. Department of the Interior*,
No. 22-cv-5821, 2022 WL 18027569 (N.D. Ill. Dec. 30, 2022) ... 7

*Besnier v. MB Global Logistics, Inc.*,
No. 25-cv-7932, ECF No. 89 (N.D. Ill. May 14, 2026) ... 11–12

*Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*,
230 F.3d 934 (7th Cir. 2000) ... 6

*Harper v. Central Wire, Inc.*,
No. 19 CV 50287, 2020 WL 5230746 (N.D. Ill. Sept. 2, 2020) ... 3–5, 8, 10–11

*In re Clearview AI, Inc. Consumer Privacy Litigation*,
No. 21 C 135, 2021 WL 5862495 (N.D. Ill. Aug. 31, 2021) ... 3, 11

*Lord v. PDD Holdings, Inc.*,
2024 WL 5432081 (N.D. Ill. Feb. 28, 2024) ... 9

*Medline Industries, Inc. v. C.R. Bard, Inc.*,
No. 17 C 7216, 2019 WL 10948865 (N.D. Ill. Sept. 10, 2019) ... 10

*New England Carpenters Health & Welfare Fund v. Abbott Laboratories*,
No. 12-cv-1662, 2013 WL 690613 (N.D. Ill. Feb. 20, 2013) ... 6

*Omnireps, LLC v. CDW Corp.*,
No. 23-cv-868, ECF No. 78 (N.D. Ill. May 8, 2024) ... 11

*Patterson v. Avery Dennison Corp.*,
281 F.3d 676 (7th Cir. 2002) ... 3

*Rodriguez v. Ford Motor Co.*,
2022 WL 704780 (N.D. Ill. Mar. 9, 2022) ... 12

*SK Hand Tool Corp. v. Dresser Industries, Inc.*,
852 F.2d 936 (7th Cir. 1988) ... 3

*Syngenta Seeds, Inc. v. BTA Branded, Inc.*,
No. 05 C 6673, 2007 WL 3256848 (N.D. Ill. Nov. 1, 2007) .................................................. 5

*Vital Proteins, LLC v. Ancient Brands, LLC*,
2023 WL 5671857 (N.D. Ill. Sept. 1, 2023) ............................................................. 11

**STATUTES AND REGULATIONS**

17 U.S.C. § 411(a) .......................................................................................... 1, 4, 11

**RULES**

Fed. R. Civ. P. 12(b)(2)........................................................................................ 2, 4, 6
Fed. R. Civ. P. 12(b)(6)............................................................................................... 6
Fed. R. Civ. P. 12(e) ............................................................................................... 1, 5
Fed. R. Civ. P. 16(b)(3)...................................................................................... 2, 7, 13
Fed. R. Civ. P. 26(a)(1)(C) ........................................................................................ 13
Fed. R. Civ. P. 26(b)(1)............................................................................................... 8
Fed. R. Civ. P. 26(c), (c)(1) ............................................................................ 1, 3, 7, 12
Fed. R. Civ. P. 26(d), (d)(1) ...................................................................................... 3, 8
Fed. R. Civ. P. 26(f) ......................................................................................... 2, 8, 13
Fed. R. Civ. P. 30(b)(6)................................................................................ 2, 6–7, 13
N.D. Ill. L.R. 37.2 ...................................................................................................... 8

**OTHER AUTHORITIES**

Case Procedures of Judge Joan B. Gottschall (updated July 31, 2026)........................... 1–2, 8, 13

## INTRODUCTION

Defendants ask the Court to stay all discovery, against each defendant and on every claim, until the Court resolves their motions to dismiss. (ECF No. 30 ("Mot.").)[1] A discovery stay is protective-order relief under Rule 26(c), and Defendants bear the burden of showing good cause for the particular stay they seek. Their Motion rests on three premises. The record contradicts each one.

*First*, the Motion argues that the pending motions "could end the action" and eliminate "[e]ntire [c]ategories of [d]iscovery." (Mot. 1, 5.) That premise is wrong. No reasonable outcome of those motions eliminates the need for discovery. Eighteen registered sound recordings and two composition-covering registrations anchor Counts I, II, IV, V, IX, and X, however the Court resolves 17 U.S.C. § 411(a). Skywork's memorandum concedes this by seeking dismissal only "to the extent" claims rely on unregistered works. (ECF No. 32 at 11–12; SM at 6, 8.) Skywork's declaration disputes that Plaintiffs' works were copied, ingested, trained on, fine-tuned, or stored through U.S. infrastructure. But it does not directly deny alleged U.S. contacts, including the Bay Area personnel alleged in paragraph 46(o), Illinois contracting and subscription activity, or U.S. storage of inference-side account and usage data. So, the prima facie record supports jurisdiction over at least the entity that operates and sells Mureka. (ECF No. 32 at 3–5, 8.) And Rule 12(e) relief would yield repleading, not less discovery.

*Second*, the Motion asserts that "[n]o request for jurisdictional discovery is pending." (Mot. 9.) That was accurate on July 30, but it is not accurate today: Plaintiffs' opposition to the

[1] Citations to "Mot." refer to Defendants' Motion to Stay Discovery (ECF No. 30); "SM" and "KM" to the memoranda supporting Skywork's and Kunlun's motions to dismiss (ECF Nos. 24-1, 26-1); "Case Procedures" to the Case Procedures of Judge Gottschall (updated July 31, 2026), https://www.ilnd.uscourts.gov/judge_display.php?LastName=Gottschall (last visited Aug. 13, 2026); and "Compl. Ex. A" to Exhibit A to the Complaint (ECF No. 1-1).

motions to dismiss expressly requests narrow, phased jurisdictional discovery in the alternative, including three defined categories, documents sufficient to show the facts at issue, and one Rule 30(b)(6) deposition per Defendant. (ECF No. 32 at 8.) The Motion concedes that "the Court can, within its discretion, authorize that discovery by further order." (Mot. 9.) Defendants acknowledge that the Court retains discretion to authorize jurisdictional discovery notwithstanding a stay. That acknowledgment confirms that any stay order should be tailored rather than categorically foreclosing the discovery the Court may need to resolve the Rule 12(b)(2) motions.

*Third*, the Motion leans on the absence of a Rule 16 scheduling order. (Mot. 1.) The Court's procedures contemplate early case-management planning even when a served defendant has not answered. They therefore provide a ready mechanism for addressing scope, sequencing, and proportionality without imposing a blanket stay before the parties have conducted their Rule 26(f) conference. The court ordinarily sets a joint initial status report "within approximately sixty days after the complaint is filed"; plaintiff's counsel convenes a preliminary meeting of counsel approximately fourteen days before it; the report "serves as the report of the parties' Rule 26(f) planning conference" and must "[p]ropose a discovery schedule complying with Rule 16(b)(3)"; and "the court expects all defendants who have been served to participate in this process regardless of whether they have filed an answer." (Case Procedures, Joint Initial Status Report.) The Court set and then deferred the initial status report that begins that sequence while service on the foreign Defendants was underway; the report currently has no due date. (Minute Entries, ECF Nos. 4, 11, 13, 28.) Both Defendants have appeared. The Motion asks the Court to suspend its own standard sequence before it has begun. Plaintiffs ask the Court to set the standard sequence in motion.

The Court should deny the Motion. If the Court believes that some structure is appropriate while the motions to dismiss are pending, Plaintiffs propose the sequencing described in Part F below, which protects every legitimate interest the Motion invokes without freezing the case.

## LEGAL STANDARD

A motion to stay discovery invokes Rule 26(c)'s good-cause requirement and the Court's Rule 26(d) sequencing authority. Defendants bear the burden of making a particularized showing that a blanket stay is warranted. Fed. R. Civ. P. 26(c)(1); *Harper v. Central Wire, Inc.*, No. 19 CV 50287, 2020 WL 5230746, at *1, 4 (N.D. Ill. Sept. 2, 2020). District courts have broad discretion in discovery matters and consider the totality of the circumstances. *Patterson v. Avery Dennison Corp*., 281 F.3d 676, 681 (7th Cir. 2002). "There is no requirement that discovery cease during the pendency of a motion to dismiss." *Harper*, 2020 WL 5230746, at *1 (citing *SK Hand Tool Corp. v. Dresser Indus., Inc.*, 852 F.2d 936, 945 (7th Cir. 1988)). Defendants agree that the "mere filing" of such a motion "does not automatically stay discovery." (Mot. 5 (quoting *In re Clearview AI, Inc. Consumer Privacy Litigation*, No. 21 C 135, 2021 WL 5862495, at *1 (N.D. Ill. Aug. 31, 2021)).) The Court considers whether a stay will prejudice the non-movant, whether it will simplify the issues, and whether it will reduce the burden of litigation. *Harper*, 2020 WL 5230746, at *1.

## ARGUMENT

### A. No Outcome of the Pending Motions Eliminates the Need for Discovery, So a Stay Would Not Simplify the Case.

The simplification factor asks whether waiting for a ruling on the motions to dismiss could remove the need for the discovery being stayed. Here, every realistic outcome leaves substantial claims, and the same core discovery, in place.

### 1. Registered works anchor six counts under any Section 411(a) ruling.

Eighteen sound recordings are covered by three registrations and those preserve Counts I and II and the registered-work predicates for Counts IX and X. (ECF No. 32 at 11; Compl. Ex. A entries 1-8, 20–29.) Two certificates, one overlapping with those eighteen recordings, also facially claim musical-work authorship and preserve the registered-work predicates for Counts IV and V. (ECF No. 32 at 12; SM at 8.)

Skywork concedes that the remedy for § 411(a) noncompliance is dismissal "without prejudice" (SM at 5) and frames its own request as dismissal "to the extent" claims rely on unregistered works (SM at 6). Complete success on Skywork's § 411(a) argument would eliminate Count III and the unregistered-work portions of other counts. It would not, however, dispose of the registered-work claims or eliminate the substantial overlapping discovery those claims require. Training-data acquisition and provenance, model operation, output generation, and Illinois commercialization must be discovered as to the registered works in every outcome. A stay does not avoid that discovery; it defers it, and then compresses it against whatever schedule follows.

### 2. The record does not support the premise that the jurisdictional motions will end the case.

A jurisdictional motion supports a stay when the asserted defect "affirmatively demonstrates that a case can go nowhere." *Harper*, 2020 WL 5230746, at *2 (citation omitted). This record demonstrates the opposite. At the Rule 12(b)(2) stage, Plaintiffs need only a prima facie showing, with uncontroverted allegations taken as true. Skywork's declaration never controverts the Complaint's allegations of Bay Area Mureka research and engineering personnel (Compl. ¶ 46(o)), United States app-store publishing and Illinois subscription commerce, Mureka's "local servers in the United States" policy language (Compl. ¶ 70), or United States

contract formation (Compl. ¶ 42). (ECF No. 32 at 3–5, 8.) Indeed, the memorandum supporting Skywork's motion canvasses ¶ 46 as "¶¶ 46(a)–(n), (p)–(x)," a citation range that omits subparagraph (o), the U.S.-workforce allegation. (SM at 10.)

Plaintiffs do not ask the Court to prejudge the motions to dismiss. The relevant point is that the jurisdictional record is contested and that, if the Court identifies a factual gap, Plaintiffs have requested targeted discovery directed to that gap. Finally, even an order dismissing one Defendant would not materially shrink discovery, because the same platform, models, works, and Illinois commerce would remain in the case through the other. Defendants say so themselves: the discovery subjects associated with Kunlun and Skywork "would substantially overlap." (Mot. 9.) Overlap means that removing a party removes little discovery, so the possibility of a partial dismissal cannot carry the simplification factor either.

**3. Rule 12(e) relief would produce repleading, not less discovery.**

Skywork's alternative request for a more definite statement, if granted, results in an amended pleading followed by the same discovery. It eliminates nothing. The same is true of the Motion's reliance on the Complaint's asserted "group pleading" (Mot. 1): Plaintiffs' opposition highlights the defendant-specific allegations the motions to dismiss pass over (ECF No. 32 at 8–10), and in all events a repleading order changes what is pleaded, not what must be discovered.

**4. What remains is the rationale this District has rejected.**

Stripped of those premises, the Motion's simplification argument is that discovery will have been unnecessary if Defendants win. *Harper* rejected that reasoning because it "is true anytime a dispositive motion is filed," and granting stays on that basis would "allow the exception to swallow the rule." 2020 WL 5230746, at *2 (quoting *Syngenta Seeds, Inc. v. BTA Branded, Inc.*, No. 05 C 6673, 2007 WL 3256848, at *2 (N.D. Ill. Nov. 1, 2007)). *Harper*

likewise held that ordinary Rule 12(b)(6) arguments "do not constitute threshold issues as defined by courts in this district," *id.,* and that describes the bulk of Skywork's fourteen-count merits motion and the arguments Kunlun incorporates by reference (KM at 10). *Accord New England Carpenters Health & Welfare Fund v. Abbott Laboratories*, No. 12-cv-1662, 2013 WL 690613, at *2–3 (N.D. Ill. Feb. 20, 2013) (denying stay pending motion to dismiss). Timing compounds the point: the motions to dismiss will be fully briefed on August 26 (ECF No. 28), so the window in which a stay could conserve anything narrows every week, while the costs of freezing the case, including prejudice to Plaintiffs (Part D), continue to run.

### B. A Stay Would Freeze the Very Discovery the Court May Need to Decide the Rule 12(b)(2) Motions.

Plaintiffs' opposition to the motions to dismiss requests, in the alternative, "short, phased" jurisdictional discovery limited to three categories: (1) Kunlun–Skywork model, data, code, and control relationships; (2) U.S. personnel, infrastructure, and model-serving locations; and (3) training-data provenance and Illinois account, billing, and delivery records, through documents sufficient to show those facts and one Rule 30(b)(6) deposition per Defendant. (ECF No. 32 at 8.) The request is precisely that — an alternative: Plaintiffs' primary position is that the uncontroverted record already carries their prima facie burden. (ECF No. 32 at 3–5, 8.) The Seventh Circuit permits narrowly targeted jurisdictional discovery when the plaintiff has made a colorable or prima facie showing, while cautioning against broad discovery imposed on foreign defendants. *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000). The facts at issue in this case, including but not limited to where the Mureka models were and are currently trained and served, and through what corporate arrangements, sit exclusively with Defendants.

This case differs from *Aland v. U.S. Department of the Interior*, No. 22-cv-5821, 2022 WL 18027569, at 6–7 (N.D. Ill. Dec. 30, 2022), where this Court stayed merits discovery and found no basis for jurisdictional discovery because the plaintiff had not identified the requested documents or explained why they were necessary to the jurisdictional determination. Plaintiffs have done both here: their opposition identifies three defined categories, limits production to documents sufficient to show the relevant facts, and requests one Rule 30(b)(6) deposition per Defendant.

A case-wide stay would therefore produce a procedural contradiction: the one category of discovery that accelerates resolution of the "threshold" issues Defendants say must come first is a category their proposed order would forbid. The Motion's answer is that "the Court can, within its discretion, authorize that discovery by further order." (Mot. 9.) Plaintiffs agree, and that concession resolves this factor. Both sides accept that appropriately scoped discovery may proceed while the motions to dismiss are pending. A dispute about the proper scope and sequence of early discovery is what status reports and Rule 16(b)(3) schedules exist to address. It is not good cause for an order halting all discovery.

### C. Defendants Identify No Concrete Burden That the Court's Ordinary Tools Cannot Manage Effectively and Efficiently.

Rule 26(c) requires a specific showing; the Motion offers pure speculation. No discovery requests have been served by either side, so the Motion cannot name a single interrogatory, document request, or deposition notice said to be disproportionate. Defendants supply no declaration, no cost estimate, no custodian count, and no description of any data volume. Their motion reasons instead from the Complaint's length to a prediction that discovery "[w]ould [b]e [b]road, [t]echnical, and [c]lass-[w]ide." (Mot. 6–8.) In this District, "broadly decrying the time and expense that is expected to be associated with responding to discovery, without any

substantiation, does not establish good cause for staying discovery." *Harper*, 2020 WL 5230746, at *4. The movants in *Harper* at least faced served requests they could describe to the court; Defendants ask this Court to weigh the burden of requests no one has written. Indeed, because the parties have not yet conferred under Rule 26(f), neither side could yet have served the requests whose burden the Motion forecasts. Fed. R. Civ. P. 26(d)(1).

Nor does a stay reduce whatever burden eventually materializes. Because substantial claims proceed in every scenario (*supra* Part A), a stay defers the same discovery and then compresses it. And to the extent any future request is genuinely overbroad, the ordinary tools supply the remedy: Rule 26(b)(1) proportionality, the Local Rule 37.2 conferral this Court's procedures require before any discovery motion, and, if necessary, a ruling on a concrete request. (Case Procedures, Motion Practice ¶ 5 (parties are "strongly encouraged to work out discovery disputes without resorting to motion practice").) Proportionality rulings on real requests, not a freeze on hypothetical ones, are the established tools built to address the concern the Motion describes.

**D. A Stay Would Impose Concrete, Compounding Prejudice.**

The Motion states that "[t]here does not appear to be concrete prejudice to Plaintiffs beyond the ordinary delay inherent in any stay." (Mot. 8.)

There is.

*Ongoing conduct.* Mureka is not paused. The Complaint alleges that Mureka operates at global scale, serving nearly ten million users, selling subscriptions to Illinois residents, and generating outputs from models trained on Plaintiffs' works. (Compl. ¶¶ 55, 57, 59; ECF No. 32 at 3–4.) Every month of a stay is a month in which the conduct at issue continues while Defendants have no present production obligations in this action. That is not the generalized

"delay in resolution" courts discount; it is ongoing accrual of the harms the Complaint challenges, with the evidence of those harms accumulating solely in Defendants' systems.

*Evidence volatility.* The Complaint documents Defendants' own account of rapid model iteration: Mureka V5.5, V6, O1, V7, and V7.5, followed in late 2025 by V7.6 and O2 (Compl. ¶ 53), with successive versions fine-tuned on curated datasets (Compl. ¶ 117). Since the Complaint was filed, Mureka has moved on again: its public materials now market a "V9.5" model generation. (Ex. 1.)[2] In an environment where model versions supersede one another within weeks or months, the categories of evidence at the center of this case, including training corpora, model checkpoints, fine-tuning datasets, and ingestion, generation, and takedown logs, may be subject to changing data retention practices as models and product versions evolve. Rapid versioning therefore supports prompt preservation planning.

The record contains no sworn assurance to the contrary. The Motion offers only counsel's statement that Defendants are "sophisticated corporate litigants that presumably have document retention and preservation systems in place." (Mot. 8.) "Presumably" is the operative word. Defendants' authority marks the difference: the Motion describes *Lord* as a case in which "defendants attested in their briefs that they were complying with document retention and preservation obligations." (Mot. 8 (describing *Lord*, 2024 WL 5432081, at *2).) No Defendant has attested to anything similar here. The Liu Declaration addresses jurisdiction and says nothing about preservation. (ECF No. 24-2.) Part F's preservation and data-map provisions address this exposure in days, and, on Defendants' position that preservation obligations continue in any event (Mot. 8–9), do not impose an extra burden on Defendants.

[2] Exhibit 1 is a screen print of Mureka's current public model (V9.5) referenced on its home page, https://www.mureka.ai/home (last visited Aug. 14, 2026).

*Foreign-defendant timing.* Delay here compounds. Both Defendants are foreign entities (a PRC company and a Singapore company). Bringing them before the Court consumed nearly seven months from filing to response. (ECF No. 1 (Dec. 17, 2025); ECF Nos. 24, 26 (July 13–14, 2026).) Cross-border discovery involving foreign corporate records will carry its own lead times once it begins. Deferring even the preliminary organization of cross-border discovery until after disposition of the motions, and potentially through another pleading cycle, could materially extend the time needed to complete discovery.

*The preliminary-injunction inference.* The absence of a preliminary-injunction motion (Mot. 8 (quoting *Medline Industries, Inc. v. C.R. Bard, Inc.*, No. 17 C 7216, 2019 WL 10948865, at *2 (N.D. Ill. Sept. 10, 2019)) is relevant to urgency, but it is not dispositive. *Medline* involved a stay after the PTAB (Patent Trial and Appeal Board) instituted inter partes review, a process that could cancel claims, create estoppel, or materially simplify a patent case. Here, no parallel adjudicative process is underway, and the claimed prejudice concerns preservation planning, foreign discovery lead times, and the continued operation of the accused service, not an assertion that immediate injunctive relief was indispensable. Moreover, the inference proves too much: if forgoing emergency relief established the absence of prejudice, no plaintiff who declined to seek an injunction could ever oppose a stay, and the exception would again swallow the rule. *Cf. Harper*, 2020 WL 5230746, at *2. *Harper* itself denied a stay although the plaintiff there sought no emergency relief and needed no discovery to oppose the motions to dismiss, because prejudice is weighed on the whole record. *Id.* at *3. A preliminary injunction against foreign operators of a popular music AI service, sought before certification, would require showings of merits and irreparable harm before Plaintiffs had obtained a single document in discovery.

Declining that gambit says nothing about whether a total discovery freeze harms Plaintiffs and the proposed class. As shown above, it does.

### E. Defendants' Authorities Support Tailoring, Not an Automatic Case-Wide Freeze.

The decisions the Motion cites do not support a case-wide freeze here. *Harper* denied a stay, although its prejudice analysis was strengthened by the plaintiff's serious illness. *Clearview* imposed defendant-specific relief. *Vital Proteins* stayed only discovery concerning challenged counterclaims while other merits discovery continued. More recently, Magistrate Judge Holleb Hotaling permitted discovery concerning named plaintiffs while staying class discovery in *Besnier v. MB Global Logistics, Inc.*, No. 25-cv-7932, ECF No. 89, at 3–4 (N.D. Ill. May 14, 2026). *Omnireps* likewise permitted discovery on a claim certain to proceed while staying discovery connected to potentially dismissed claims and defendants. *Omnireps, LLC v. CDW Corp.*, No. 23-cv-868, ECF No. 78, at 6–7 (N.D. Ill. May 8, 2024) (allowing discovery on a claim certain to proceed while staying discovery tied to claims and defendants subject to dispositive motions). These decisions confirm that the proper question is not whether some threshold argument is pending, but what discovery can proceed without defeating the purpose of that argument.

Defendants' authorities granting broader stays arose from materially different records, including qualified immunity, instituted PTAB review, identified sweeping class requests, or motions capable of moving the entire litigation to another forum. Here, no discovery requests have been served; Plaintiffs have identified targeted jurisdictional discovery that may assist the Court; and significant registered-work discovery would remain if Skywork prevailed only on its § 411(a) argument. None of the language Defendants quote from those decisions addresses a record like this one, in which the movants' merits briefing concedes registered-work anchors

across six counts (SM at 6, 8), the operator-Defendant's declaration leaves the core U.S.-operations allegations uncontroverted (ECF No. 32 at 3–5, 8), and a pending request for jurisdictional discovery would be frozen by the very order sought (ECF No. 32 at 8; Mot. 9). At most, the record supports the sequencing proposed in Part F.

The stays entered in other cases brought by Plaintiffs' counsel do not establish good cause here. Those cases involved different defendants, motions, records, and potential forums. Suno and Uncharted Labs, for example, presented first-filed and transfer issues capable of relocating the entire litigation. No comparable forum-selection issue is pending here. Rule 26(c) calls for a record-specific assessment, not matching outcomes across unrelated defendants.

Nor does the class-action posture supply an independent basis for a stay. The observation that stays are common "[g]iven the burden, time, and expense often associated with responding to discovery in a putative class action" (Mot. 5 (quoting *Rodriguez*, 2022 WL 704780, at *2)) presupposes that a stay will spare the parties that burden because the case may end and the discovery might never happen. Because discovery on the registered works proceeds on any outcome of the pending motions (*supra* Part A), a stay here spares nothing: it reschedules the same class-wide discovery for a later, more compressed window, after the prejudice described in Part D has accrued. The class allegations describe the scale of the discovery to come; they say nothing about why it should start later.

### F. At Most, the Court Should Order Proportionate Sequencing Under Its Own Procedures, Not a Freeze.

The Motion should be denied, and the case should be managed in accordance with the Court's standard procedures. If the Court concludes that additional structure is warranted while the motions to dismiss are pending, that structure should be sequencing, not suspension. *See Besnier*, No. 25-cv-7932, ECF No. 89, at 3–4 (N.D. Ill. May 14, 2026) (Holleb Hotaling, M.J.)

(granting stay only as to class discovery and permitting discovery concerning the named plaintiffs to proceed). Without conceding that any stay is justified, Plaintiffs propose:

1. *Case management.* Set a date for the joint initial status report, with the preliminary meeting of counsel contemplated by the Court's procedures to precede it by approximately fourteen days.[3] The report will serve as the parties' Rule 26(f) report and propose a sequenced Rule 16(b)(3) discovery schedule; unless otherwise stipulated or ordered, initial disclosures will be due as provided by Rule 26(a)(1)(C). (Case Procedures, Joint Initial Status Report.)

2. *Jurisdictional discovery, if needed.* Plaintiffs' position is that no jurisdictional discovery is required: the prima facie record, including the allegations Skywork's declaration leaves uncontroverted, already supports jurisdiction. (ECF No. 32 at 3–5, 8; Part A.2.) If, however, the Court finds a material jurisdictional gap, permit the jurisdictional discovery requested in Plaintiffs' opposition to the motions to dismiss (ECF No. 32 at 8), to be completed within sixty days: (a) the Kunlun–Skywork model, data, code, and control relationships, including— each Defendant's respective role in developing, controlling, and operating Mureka; (b) U.S. personnel, infrastructure, and model-serving locations, including inference-side data operations at those locations; and (c) Illinois account formation, billing, subscription, and delivery records, together with training-data provenance insofar as it identifies the corporate actor, location, or U.S. means of acquisition or processing. Production would be limited to documents sufficient to show those facts, plus one Rule 30(b)(6) deposition per Defendant, followed by short supplemental jurisdictional submissions. [4]

---

[3] On August 14, 2026, Plaintiffs' counsel proposed dates for that meeting to Defendants' counsel.

[4] This request is narrower than the request at ECF No. 32: training-data provenance is confined to jurisdictional identifiers (who acquired or processed the data, where, and by what U.S. means) so that this phase remains jurisdictional rather than merits discovery.

3. *Preservation and ESI planning.* Within twenty-one days, the parties meet and confer on a nonprivileged preservation and ESI protocol addressing the systems and data sources reasonably likely to contain relevant information, including model versions and checkpoints, training and fine-tuning datasets, ingestion and generation logs, takedown records, and Illinois account, billing, and delivery records, with each Defendant identifying the applicable nonprivileged retention periods and confirming that reasonably identifiable relevant sources have been preserved, without disclosure of privileged litigation-hold communications. This is the step Defendants themselves invite: they ask the Court to "expressly direct all parties to take appropriate and reasonable steps to preserve and retain relevant documents and information." (Mot. 2.) Because Defendants acknowledge that their preservation obligations continue regardless (Mot. 8–9), the protocol imposes nothing they dispute owing, while mooting the evidence-volatility risk described in Part D.

## CONCLUSION

The Court should deny Defendants' Motion to Stay Discovery (ECF No. 30) and set a date for the joint initial status report. In the alternative, the Court should enter the proposed sequencing order permitting the discovery described in Part F while the motions to dismiss are pending.

Dated: August 14, 2026

Respectfully submitted,

LOEVY & LOEVY

/s/ Ross Kimbarovsky

Ross Kimbarovsky (6229590)
ross@loevy.com
Jon Loevy (6218524)
jon@loevy.com
Michael Kanovitz (6275233)
mike@loevy.com
Matthew Topic (6290923)
matt@loevy.com
Aaron Tucek (98624)
aaron@loevy.com
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
312.243.5900 (phone)
312.243.5902 (fax)

*Attorneys for Plaintiffs Attack the Sound LLC, David Woulard, Stan Burjek, James Burjek, Berk Ergoz, Hamza Jilani, Maatkara Wilson, Arjun Singh, Magnus Fiennes, and Michael Mell*