# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ATTACK THE SOUND LLC, an Illinois limited liability company, DAVID WOULARD, STAN BURJEK, JAMES BURJEK, BERK ERGOZ, HAMZA JILANI, MAATKARA WILSON, ARJUN SINGH, MAGNUS FIENNES, and MICHAEL MELL, each individually and on behalf of all others similarly situated, | ) | Case No. 25-cv-15354 |
| Plaintiffs, | ) | District Judge Joan B. Gottschall |
| v. | ) | Magistrate Judge Keri L. Holleb Hotaling |
| KUNLUN TECH CO., LTD., SKYWORK AI PTE. LTD., and UNKNOWN DEFENDANTS, | ) | |
| Defendants. | ) | |

**PLAINTIFFS' SUR-REPLY IN FURTHER OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE COMPLAINT**

Defendants' joint reply (Dkt. 36 ("Reply")) narrows their motions to dismiss considerably. It assumes that Skywork sells Mureka subscriptions into Illinois (Id. at 5); it does not renew the preemption arguments; it answers the domestic-conduct allegations supporting Counts I and II in a single sentence (Id. at 9); and it rests what remains on one theme: that the Complaint pleads no "Plaintiff-specific, Defendant-specific" event.

Three things about what remains warrant a short sur-reply, because each appears for the first time in the Reply.

*First*, personal jurisdiction now turns on a single question: whether selling the accused product into Illinois "relates to" claims about that product, and the Reply's new authority, *Schoeps v. Sompo Holdings, Inc.*, 160 F.4th 815 (7th Cir. 2025), confirms the answer.

*Second*, the Reply's central theme rests on a misreading of two sentences in the Opposition and on a demand for evidence that Rule 12 does not impose.

*Third*, the Reply relies on *G.T. by & through Hanlon v. Samsung Electronics America, Inc.*, No. 25-1120, 2026 WL 2279903 (7th Cir. Aug. 7, 2026), and advances a new ground for dismissing Count III; neither appears in an opening memorandum.

Plaintiffs address only those matters and otherwise stand on the Opposition (Dkt. 32).

## I. Jurisdiction Now Turns on One Question, and *Ford* Answers It

The Reply assumes Skywork's Illinois commerce, "[a]ssume Skywork sells Mureka subscriptions in Illinois" (Dkt. 36 at 5), and argues only that the commerce is unrelated to the claims. That is the third relatedness theory in three briefs. Skywork's opening memorandum argued that the pleaded contacts were "ordinary platform availability" that did not show Skywork "targeted Illinois as Illinois" (Dkt. 24-1 at 26), and it cited no relatedness authority at all. Neither *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021), nor *Schoeps* appears in their brief. The Liu declaration then placed training outside Illinois for purposes of the motion to dismiss. The Reply now accepts the commerce and, citing *Schoeps*, calls it legally unrelated.

*Schoeps* does not help Defendants. The plaintiffs there sought to recover a painting purchased at auction in Europe in 1987 and kept in Japan. The defendants' Illinois contacts were an insurance business unrelated to the painting and a four-month museum loan two decades before suit, and the plaintiffs argued that the insurance sales "related to" the painting because the painting marketed the insurance brand. 160 F.4th at 829. The court rejected that theory because it would mean "specific personal jurisdiction would exist over a corporation anywhere it did any business." *Id.* The claims concerned nothing the defendants sold in Illinois.

*Here the Illinois commerce is the accused product.* Every count concerns how Mureka was built, from Plaintiffs' recordings, lyrics, and voices, and what it delivers to the Illinois subscribers Skywork bills: outputs, ownership labels, and voice replicas. Delivery of those outputs into Illinois is itself challenged conduct (Counts II, VIII–X), and the BIPA, IRPA, and UDTPA injuries are pleaded in Illinois. (Dkt. 32 at 3–5.) *Ford* resolves the training-side claims as well. The vehicles there were designed, manufactured, and first sold outside the forum states; jurisdiction attached because Ford served the forum market for the same product. 592 U.S. at 356, 362–65. A seller does not escape the state into which it sells, bills, and delivers the very product every claim concerns because the product was made elsewhere. *Schoeps*, which cites *NBA Properties* with approval, 160 F.4th at 829 n.15, says nothing to the contrary. Rule 4(k)(2) then supplies the forum for the federal claims against each Defendant that names no other state. (Dkt. 32 at 7–8.)

The Reply's remaining jurisdictional points overstate a footnote. Footnote 3 of the Opposition states that, for purposes of Rule 12(b)(2) only, Plaintiffs do not ask the Court to reject Liu's statements "about where initial training, fine-tuning, or training-data storage occurred" (the subjects of Liu's paragraphs 4 and 5) and that "[j]urisdiction is established by contacts Liu does not deny and partly admits." (Dkt. 32 at 5 n.3.) The Reply converts that into an "express[]" non-contest of the declaration and treats Liu as "establish[ing]" that Skywork "did not copy, ingest, train on, fine-tune on, or store any Plaintiff work . . . through Illinois or United States infrastructure." (Dkt. 36 at 5, citing Dkt. 24-2, Liu Decl. ¶¶ 4–9.) Liu's paragraphs 6 and 7 deny only that Skywork did "copy, ingest, use for training, use for fine-tuning, or store in any training corpus" a Plaintiff work in Illinois. They say nothing about the "copying, processing, and delivery" of Plaintiffs' works on U.S. infrastructure alleged in paragraph 46(s), the Bay Area

Mureka engineering operation alleged in paragraph 46(o), or the "local servers in the United States" alleged in paragraph 70. (Dkt. 32 at 4–5, 13–14.) Those allegations stand uncontroverted. So does the Illinois commerce: the Reply calls Liu's paragraphs 10 through 15 "[t]he uncontroverted record" (Dkt. 36 at 6), but statements that Skywork is "not aware of any record" of a named Plaintiff's Illinois transaction (Dkt. 24-2, Liu Decl. ¶¶ 10, 13–14) deny nothing, and the pleaded Illinois subscriptions, billing, and in-state injuries remain part of the prima facie record. (Dkt. 32 at 3–5.)

If the Court views any relatedness fact as open, such as where Mureka's U.S. processing and delivery occur, or the Kunlun–Skywork model and control flow, those are identified, disputed jurisdictional facts. They are evidenced by Lam's title, the consolidated financials his declaration acknowledges, Kunlun's "controlled AI subsidiary" description, and a research paper that benchmarks Mureka by name. (Dkt. 32 at 5–8.) That is the ambiguity *Howell* found sufficient for discovery, and Plaintiffs' narrowed request, documents and one deposition per Defendant (Dkt. 32 at 8; Dkt. 33 at 13 n.4), is not the "bare and unsupported" demand rejected in *In re Sheehan*, 48 F.4th 513, 526–27 (7th Cir. 2022).

## II. The Reply's "Plaintiff-Specific Event" Theme Mistakes Proof for Pleading

The Reply's Introduction, its Sections III and IV, and the IRPA and UDTPA portions of Section V rest on a purported concession "that the Complaint identifies no Mureka output substantially similar to a named Plaintiff's work." (Dkt. 36 at 1, 9–11, 13.) The Opposition's sentence reads in full:

> "The Complaint does not yet identify an output substantially similar to a named Plaintiff's work, but that is not the only predicate, and the user-output allegations are plausible from Mureka's scale, reference-track design, sound-alike marketing, and observed reproduction of source-identifying audio from a training recording."

(Dkt. 32 at 21–22.) That sentence addresses one of three pleaded direct-infringement predicates for Counts IX and X. It concedes no element of any count, and it does not concern Count VIII, whose pleaded falsity rule reaches outputs containing protected expression owned by "Plaintiffs or class members." (Dkt. 32 at 18.)

What the Reply actually demands, that Plaintiffs identify a particular Mureka output before discovery is proof, not pleading. Rule 12 tests the Complaint's allegations for plausibility; it does not require the evidence that will establish them. (Dkt. 32 at 13.) The Complaint pleads Plaintiff-specific events in detail at the ingestion stage: the removal of CMI from the Exhibit A works themselves, the circumvention of Plaintiffs' own YouTube channels, and speaker embeddings computed from each Illinois Plaintiff's identified recordings. (Dkt. 1 ¶¶ 94–102, 225–28, 286.) At the output stage, it alleges the statutory events—outputs embodying Plaintiffs' and class members' expression under substituted ownership labels, and replicas of Plaintiffs' voices fixed in publicly disseminated outputs—and pleads the facts that make those allegations plausible: Plaintiffs' works in the training corpus, an observed instance of memorized source audio reproduced in a Mureka output, and the per-Plaintiff embeddings just described. (Dkt. 1 ¶¶ 250–54, 286, 300(b), 302–03.) Which outputs contain which source expression is recorded in Defendants' prompt, generation, and distribution logs. Rule 8 does not require Plaintiffs to plead Defendants' records. *Huon v. Denton*, 841 F.3d 733, 742–43 (7th Cir. 2016).

Two related characterizations by Defendants should also be corrected. The Reply asserts that "Plaintiffs themselves found and inspected a CashMoneyAP output." (Dkt. 36 at 1.) The Complaint alleges that Mureka outputs "have been observed to reproduce" that producer tag (Dkt. 1 ¶ 250(d)); neither the Complaint nor the Opposition says who generated the observed output. And the Reply quotes the Opposition's preemption discussion, "unauthorized

reproduction alone proves none of those elements," as an admission that the confusion and clearance elements of Count XIII are unpleaded. (Dkt. 36 at 13, quoting Dkt. 32 at 29.) The quoted sentence states what Count XIII requires *beyond* copying, which is why the claim is not equivalent to a Section 106 right. The elements are pleaded, with the specific representations, surfaces, audiences, and omissions identified. (Dkt. 32 at 27–28.)

## III. *G.T.* Confirms That Count XI Pleads the Control BIPA Requires

*G.T.* affirmed dismissal because the face templates at issue were created and stored on the users' devices and the complaint alleged no facts showing Samsung could access or use them. The court held that BIPA's operative terms require the company's "control" over the biometric data, approving the observation that "control of the facial scan software" is "not the same as control of the facial scan data." 2026 WL 2279903, at *5. According to *G.T.,* the distinction is where the data is stored, accessed, or used. Here, Defendants did not supply a tool that processes data on someone else's device. They ran the extraction pipeline themselves, including vocal isolation and spectral-feature extraction (Compl. ¶ 90), and "computed and stored" the resulting speaker-embedding templates in their own training corpora and model artifacts, on their own infrastructure, with access extended to their own contractors and partners. (Dkt. 1 ¶¶ 286, 290, 294.) In this case, no biometric data sits on a user's device; all of it sits with Defendants. That is the control *G.T.* requires. The Reply's remaining point, that the Complaint attributes the computation to "Defendants" collectively, is the notice argument Part II of the Opposition answered under *Huon* and this Court's decision in *Jordan*. (Dkt. 32 at 9–10.)

## IV. The New Count III Argument Is Waived, and Its Premise Is Information Only Defendants Hold

The Reply argues, for the first time, that Count III fails because no named work is pleaded as copied while unregistered, yet registered before filing. (Dkt. 36 at 2, invoking

*Falcon*.) Neither opening memorandum made that argument, and it is waived for these motions. *See Dexia Crédit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010); *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009). It also proves too much. Whether a registered work, for example, the ten works registered effective February 8, 2023 (SRu 1-533-131), was copied before or after its registration date turns on Defendants' acquisition and ingestion records, precisely the kind of defendant-held fact Rule 8 does not require a plaintiff to plead. (Dkt. 32 at 10, 14 & n.7); *Huon*, 841 F.3d at 742–43.[1]

## CONCLUSION

The Opposition's three concessions stand on their original terms: dismissal without prejudice of copyright claims on United States works unregistered when suit was filed; dismissal without prejudice of lyric and composition claims resting solely on the two sound-recording-only registrations; and withdrawal of unjust enrichment as a freestanding count, with its restitution theory preserved. (Dkt. 32 at 1 n.1, 30.) Nothing else in the Reply warrants dismissal. The motions should be denied except as to the conceded dismissals; in the alternative, the Court should permit the narrow jurisdictional discovery described in Part I.E of the Opposition before dismissing either Defendant.

Dated: September 3, 2026

Respectfully submitted,

LOEVY & LOEVY

/s/ Ross Kimbarovsky

---

[1] If the Court nonetheless finds the pleading deficient, the result should match the treatment of every other registration issue in this case: work-specific dismissal without prejudice, on the terms stated in the Opposition. (Dkt. 32 at 1 n.1, 30.) Additionally, the Reply's opposition to a future motion for leave to amend (Dkt. 36 at 2–3) argues a question that is not before the Court. Plaintiffs will address those authorities, and the divided district-court decisions the Reply does not acknowledge, if and when leave is sought.

Ross Kimbarovsky (6229590)
ross@loevy.com
Jon Loevy (6218524)
jon@loevy.com
Michael Kanovitz (6275233)
mike@loevy.com
Matthew Topic (6290923)
matt@loevy.com
Aaron Tucek (98624)
aaron@loevy.com
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
312.243.5900 (phone)
312.243.5902 (fax)

*Attorneys for Plaintiffs Attack the Sound LLC, David Woulard, Stan Burjek, James Burjek, Berk Ergoz, Hamza Jilani, Maatkara Wilson, Arjun Singh, Magnus Fiennes, and Michael Mell*