# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ATTACK THE SOUND LLC, an Illinois limited liability company, DAVID WOULARD, STAN BURJEK, JAMES BURJEK, BERK ERGOZ, HAMZA JILANI, MAATKARA WILSON, ARJUN SINGH, MAGNUS FIENNES, and MICHAEL MELL, each individually and on behalf of all others similarly situated,

Plaintiffs,

v.

KUNLUN TECH CO., LTD., SKYWORK AI PTE. LTD., and UNKNOWN DEFENDANTS,

Defendants.

Civil Action No. 1:25-cv-15354

**DEFENDANTS' LIMITED JOINT SUR-SUR-REPLY IN SUPPORT OF MOTIONS TO DISMISS**

Judge: Hon. Joan B. Gottschall
Magistrate Judge: Hon. Keri L. Holleb Hotaling

## INTRODUCTION

Plaintiffs' Sur-Reply changes five things, and none changes the result. Section I turns the Reply's assumed Illinois subscriptions into a concession and broadens *Ford* from claim-related forum conduct to Mureka commerce generally. Section II repeats the Opposition's information-asymmetry answer without supplying the missing named-Plaintiff output event. Section III moves *G.T.* from device-side to Defendant-side storage and treats that distinction as BIPA control. Section IV labels the Count III timing response new. ECF No. 38 ¶ 4 does the same to the Fiennes and Counts IX and X responses. This brief addresses only those deltas and adds no evidence, dismissal ground, or relief.

**I. Section I misstates the briefing and overreads *Ford* because Plaintiffs' factual distinction of *Schoeps* does not make all Mureka commerce claim-related.**

Section I starts with two mischaracterizations. The Reply did not "accept[] the commerce"; it said, "Assume Skywork sells Mureka subscriptions in Illinois." ECF No. 36 at 5. Relatedness also did not first appear in reply. Skywork's opening memorandum challenges the absence of "claim-related Illinois contacts." ECF No. 24-1 at 25–28. Plaintiffs answered with *Ford*, ECF No. 32 at 3–5, and the Reply answered that use of *Ford* with *Schoeps*, ECF No. 36 at 4–6. That is responsive development, not a new ground. *Burton v. Ghosh*, 961 F.3d 960, 965 n.5 (7th Cir. 2020) ("Burton did not present new arguments in his reply brief. He merely developed those made in the opening brief, which is appropriate.").

*Ford* shows what Plaintiffs' product analogy omits. Ford had "advertised, sold, and serviced" the same models for years and "systematically served a market in Montana and Minnesota for the very vehicles" that injured forum residents. *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 365 (2021). That alignment, not product identity alone, supplied the "essential foundation" of specific jurisdiction. *Ford*, 592 U.S. at 365.

Even taking the pleaded Illinois-facing commerce at face value, those allegations concern recurring subscriptions, user tracking, Illinois-facing marketing, continuing Mureka service, and, for BIPA, embeddings "for each Illinois Plaintiff." Compl. ¶¶ 46(a)–(s), 49, 286; ECF No. 32 at 3–5. At most, those allegations bring *Ford* closest to claims tied to an Illinois output, representation, biometric event, or transaction. But Liu identifies no record of a named Plaintiff's Illinois upload, marketing interaction, account, or transaction; denies specified named-Plaintiff biometric and identity-use acts in Illinois; and places training, fine-tuning, training-data storage, and specified Plaintiff-work acts outside Illinois and, for paragraph 7's acts, outside United

States infrastructure. ECF No. 24-2 ¶¶ 4–15. General Illinois subscriptions therefore do not by themselves bridge the training-centered claims.

ECF No. 40 distinguishes *Schoeps* on its facts: its Illinois insurance business did not concern title to the painting, while Plaintiffs say "the Illinois commerce is the accused product" because every count concerns Mureka. ECF No. 40 at 2–3. But that distinction identifies the question rather than answering it. *Schoeps* requires "litigation-specific conduct of the defendant in the proposed forum state." *Schoeps v. Sompo Holdings, Inc.*, 160 F.4th 815, 829 (7th Cir. 2025). Calling Mureka "the accused product" cannot collapse training, subscriptions, output delivery, marketing, and biometric processing into one forum contact. *Ford* itself said "relate to" "incorporates real limits" and did not "consider internet transactions, which may raise doctrinal questions of their own." *Ford*, 592 U.S. at 362, 366 n.4. *B.D.* rejected an expansive reading of *Ford* despite purposeful in-state contacts because a "disconnect" remained between those contacts and the suit. *B.D. v. Samsung SDI Co.*, 143 F.4th 757, 769–74 (7th Cir. 2025). That answers ECF No. 40's assertion that "Ford resolves the training-side claims as well." ECF No. 40 at 3. Downstream Illinois subscriptions are not the alleged copying, ingestion, training, fine-tuning, or corpus storage. *NBA Properties* is consistent: relatedness existed because the Illinois sale itself "involve[d] the infringing product." *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 625 (7th Cir. 2022). For the training-centered claims, an ordinary Mureka subscription is not itself the challenged training act. *Schoeps* footnote 15 likewise treated assumed Illinois website sales as irrelevant because they had "no relevance to the claims in this litigation." *Schoeps*, 160 F.4th at 829 n.15.

Section I also misstates Liu. It says Liu ¶¶ 6–7 denies the specified Plaintiff-work acts "only" in Illinois. ECF No. 40 at 3. Paragraph 7 extends the denial through "any network endpoint

(including mureka.ai) or any other United States infrastructure." ECF No. 24-2 ¶ 7. Liu need not negate all Illinois Mureka activity because the defect is relatedness, not contactlessness.

The Sur-Reply repackages the same discovery request, not a new jurisdictional showing. ECF No. 36 already addressed the categories Plaintiffs now call "identified" and "disputed": some would add detail to assumed Illinois or United States commerce; others seek the missing claim-related or defendant-specific contact itself. ECF No. 36 at 7–8. ECF No. 40 responds by citing the same request in ECF No. 32 and the same narrowing in ECF No. 33, then stressing that production would be limited to documents and one deposition per Defendant. ECF No. 40 at 4. But *Sheehan* requires "a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." *In re Sheehan*, 48 F.4th 513, 526 (7th Cir. 2022). Repeating the requested categories as narrow does not answer that threshold. Identifying what discovery might establish does not supply the jurisdictional predicate required to obtain it.

**II. Section II repeats the Opposition's information-asymmetry response because it still leaves the named-Plaintiff output event unpleaded.**

Section II does not answer the Reply's point; it repeats the Opposition's information-asymmetry response. The Opposition itself states that the Complaint "does not yet identify an output substantially similar to a named Plaintiff's work," argued that the output allegations were nevertheless plausible, and said the "prompt, output, and distribution records identifying particular instances are Defendants'." ECF No. 32 at 21–22. The Reply answered that this is not an information-asymmetry problem because the missing item is a named-Plaintiff output event, not the internal record that might prove one. ECF No. 36 at 1, 9–11. The Sur-Reply now makes the same move again: it points to Plaintiff-specific ingestion allegations, generic output allegations, and Defendants' logs, but still identifies no named-Plaintiff output. ECF No. 40 at 4–5. Recasting the same pleading gap as information asymmetry does not fill it.

*Huon* does not bridge that gap. The allegedly defamatory comments there were pleaded; only authorship was inaccessible. *Huon v. Denton*, 841 F.3d 733, 742–43 (7th Cir. 2016). ECF No. 40 disputes the Reply's attribution of the CashMoneyAP output to Plaintiffs. That attribution is immaterial: Compl. ¶ 250(d) concerns a non-Plaintiff producer and still supplies no named-Plaintiff output event. Plaintiffs fail to plead that the CashMoneyAP output, or any other output, contains any protected expression, let alone any Plaintiff's work.

The Sur-Reply also emphasizes that the Reply did not renew Skywork's § 301 argument. ECF No. 40 at 5. This sur-sur-reply does not ask the Court to decide preemption. But Plaintiffs resisted preemption by narrowing Count XIII to sponsorship, approval, affiliation, and legal-clearance representations and insisting that "unauthorized reproduction alone proves none of those elements." ECF No. 32 at 28–29. The Reply did not convert that sentence into a pleading admission; it held Plaintiffs to the additional, non-copyright-equivalent nexus their own narrowing made necessary. ECF No. 36 at 13. The Court can enforce that boundary without deciding preemption.

**III. Section III's storage-location distinction does not establish entity-specific control because *G.T.* asks whether the subject company controlled the biometric data.**

ECF No. 40 emphasizes a storage-location difference: *G.T.* involved face templates stored only on users' devices, with no allegation Samsung could access, modify, or use them; the Complaint here alleges speaker embeddings on Defendants' systems. ECF No. 40 at 6; Compl. ¶¶ 286, 290. But that difference does not establish the required control for either Defendant. ECF No. 40 nevertheless treats it as dispositive, asserting, "That is the control *G.T.* requires." *G.T.* held that "possession," "collect," "capture," and "obtain" require the "subject company" to have or obtain control over the biometric data. *G.T. ex rel. Hanlon v. Samsung Electronics America, Inc.*, No. 25-

1120, 2026 WL 2279903, at *4 (7th Cir. Aug. 7, 2026). Group-level storage does not answer which corporate Defendant possessed, collected, captured, or obtained which data.

**IV. Section IV's Count III objection fails because the Opposition itself supplied the timing route the Reply tested.**

Skywork's opening memorandum argues that Count III rests on the Previously-Unregistered Copyright Class and lacks a registered-work anchor. ECF No. 24-1 at 5–6. The Opposition then supplied the route around that ground: "A work copied while unregistered but registered before December 17, 2025 falls within the class definition and satisfies § 411(a)." ECF No. 32 at 11. The Reply tested that interval against the pleaded named works and identified none alleged within it. ECF No. 36 at 2. That is the kind of response *White* permits: a point "prompted by" the response may be "appropriate ... to first raise ... at that point." *Central States, Southeast & Southwest Areas Pension Fund v. White*, 258 F.3d 636, 639 n.2 (7th Cir. 2001). ECF No. 40 answers that Defendants' records would reveal the copying date. ECF No. 40 at 6–7. Calling the copying date defendant-held does not allege that any named work falls within Plaintiffs' own interval.

**V. ECF No. 38 ¶ 4 overstates newness because the Opposition itself opened both the Fiennes and Counts IX and X issues.**

Fiennes is the clearest example. The opening ground is § 411(a): unregistered United States works cannot support infringement claims. ECF No. 24-1 at 4–7. The Opposition then invoked the statutory exception, arguing that BBC Worldwide and film allegations made foreign first publication plausible, that nothing on the Complaint's face established United States works, and that Skywork "never engages the statutory limitation." ECF No. 32 at 11–12. The Reply answered that exception: the Complaint pleads no asserted work as first published abroad, so those BBC and film allegations do not plead first publication abroad. ECF No. 36 at 2. *White* confirms that a point prompted by the response may properly first appear in reply. *White*, 258 F.3d at 640 n.2. The

Reply's Fiennes discussion therefore answered the Opposition's exception rather than introducing a different dismissal ground.

Counts IX and X present a narrower version of the same point. The opening memorandum challenges the missing direct-infringement predicate and the sufficiency of inducement, control, and financial benefit. ECF No. 24-1 at 15–17. The Opposition answered by adding supplier copying as an alternative predicate while defending the secondary-liability elements through Mureka customers, outputs, and supplier relationships. ECF No. 32 at 20–23. The Reply's actor-alignment analysis tested whether that cure connected the predicate to the pleaded secondary-liability elements. ECF No. 36 at 10–11. ECF No. 38 ¶ 4 independently shows Plaintiffs had notice of that analysis: it identified Counts IX and X and Fiennes, then expressly said the proposed Sur-Reply "does not address" them; ¶ 5 confined the filing to other matters. ECF No. 38 preserved only an objection that those responses were new while expressly declining to answer their merits.

## CONCLUSION

The deltas do not change the result. ECF No. 40's factual distinction of *Schoeps* still leaves the claim-specific bridge required by *Ford* and *B.D.* missing; calling all Mureka conduct one product does not supply it. Section I also misstates Liu and repackages the same discovery request without a new jurisdictional showing. Section II repeats the Opposition's information-asymmetry response without supplying a named-Plaintiff output. Section III's storage-location distinction does not establish entity-specific control. Section IV labels a response to Plaintiffs' own Count III timing route new. And ECF No. 38 ¶ 4 overstates the newness of the Fiennes and Counts IX and X responses while confirming Plaintiffs had notice of both. The Court should decide the motions on the grounds preserved in ECF Nos. 24, 26, and 36.

DATED: September 8, 2026

Respectfully submitted,

**KING & WOOD LLP**
By: /s/ J. Benjamin Bai
J. Benjamin Bai
Texas Bar No. 24001675
benjamin.bai@cn.kingandwood.com
600 5th Ave, 27th Floor
New York, NY 10020
Tel.: (212) 319-4755
Fax: (917) 591-8167

**KING & WOOD**
Haolu Feng
D.C. Bar No. 90001026
harry.feng@cn.kingandwood.com
17th Floor, One ICC, Shanghai ICC
999 Middle Huai Hai Road, Xuhui District
Shanghai 200031, China
Tel.: +86 21 2352 6585
Fax: +86 21 2412 6150

*Attorneys for Defendants*
*KUNLUN TECH CO., LTD. and*
*SKYWORK AI PTE. LTD.*